(No. 26737.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ADOLPH C. BYDALEK, Plaintiff in Error.

*Opinion filed November 17, 1942—Rehearing denied Jan. 13, 1943.*

ODE L. RANKIN, and CAMERON LATTER, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JULIUS L. SHERWIN, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The grand jury of Cook county returned an indictment against the plaintiff in error, together with Goodsell F. Henke, James Russell and Joseph Kelly, charging them with conspiring to obtain money by forging and uttering

a will of one Carl Krzysko, deceased, and thereby committing an illegal act injurious to the administration of public justice. The plaintiff in error, Adolph C. Bydalek, was tried alone before a jury in the criminal court of Cook county and was found guilty. After overruling motions in arrest of judgment and for a new trial, the plaintiff in error was sentenced to the penitentiary for a term of from one to five years and fined $1000. From this judgment the plaintiff in error sued out a writ of error in the Appellate Court for the First District, where the judgment of the criminal court was affirmed. The plaintiff in error seeks to reverse that judgment by writ of error to this court. The principal witness for the State against the plaintiff in error was the codefendant Henke, who was at the time of the trial a lawyer and had practiced his profession in Chicago, Chicago Heights and Grant Park for a number of years. The plaintiff in error contends that the verdict and judgment are supported only by the testimony of the accomplice, Henke, which is of such character that it is unworthy of belief; that counsel for the People indulged in prejudicial statements in argument not based upon the evidence; that the trial judge committed error by instructing the jury orally as to the law of the case; that the court gave to the jury improper instructions and that the trial court unduly limited and restricted the cross-examination of the accomplice-witness, Henke. As to the first point raised by plaintiff in error it is necessary to briefly review some of the facts.

Carl Krzysko died in Chicago Heights in Cook county on June 22, 1938, apparently intestate. He had come to this country about 35 years prior to the trial, from Poland, and was a distant cousin to the plaintiff in error. He had a large number of relatives in Kankakee county. When he first came to this country he lived with the family of the plaintiff in error for a few years and then with other members of the Bydalek family for a considerable number

of years. Later he moved to Chicago Heights and for many years lived with William Liesenfelt and took his meals with the family of Peter Bantz. Shortly after the death of Krzysko, the plaintiff in error, Bydalek, engaged Henke to assist him in obtaining control of the Krzysko estate for the Bydalek family. Henke and the plaintiff in error personally investigated the matter of the decedent's relationships by going among friends and relatives, and thereafter preparing a petition for letters of administration to be issued to the plaintiff in error. He was later appointed administrator of the estate by the probate court of Cook county. Immediately after the issuance of letters, Henke and the plaintiff in error made a search for assets of the estate. This search resulted in the discovery that the estate not only amounted to the estimated $3000 but approximated in value the sum of $20,000. From this point on the testimony of Henke and plaintiff in error is widely at variance.

Henke testified that he and the plaintiff in error conspired to make and forge a false will and that the latter, after some discussion, gave directions with respect to the provisions of said will. Henke further testified that he introduced Kelly and Russell, the persons who signed the will as witnesses. The will, which is the subject of the indictment, is admittedly a rank forgery. Bydalek testified that Henke told him he had represented Krzysko at one time and had drawn a will for him, and later told him that he had located the will, and that when he asked concerning its contents, Henke told him that such information would come later. Henke testified that plaintiff in error after being informed how he would inherit under the Statute of Descent, complained that he ought to have a greater share in the estate, inquired as to how that could be done, and it was at that time that Henke suggested that it could be done by a spurious will. The forged will provided that the plaintiff in error receive $10,000, made various bequests

to blood relatives and friends with whom the deceased had lived for a long time, a bequest of $1000 to a sister and possible heirs still living in Poland, a bequest to the Catholic Church in Chicago Heights, appointed as executor Conrad Linder, one of the deceased's closest friends and advisors, who had died prior to the drafting of the will, and appointed the plaintiff in error as Linder's successor, waiving surety for the executor's bond.

There is no doubt but what Henke with his knowledge of legal practice was the moving spirit in the scheme and the drafting of the instrument designated as the will, and there is no doubt but what it was his testimony in a large measure which brought about the conviction of Bydalek. Counsel for Bydalek insists that where the testimony of an accomplice lacks material corroboration, or where it is discredited, or where it appears to be actuated by a desire to avoid punishment, it is not sufficient upon which to sustain a verdict and judgment of conviction. *People* v. *Cohen,* 376 Ill. 382; *People* v. *Vehon,* 340 id. 511; *People* v. *Reznik,* 361 id. 145.

It is hard to believe, however, that Bydalek knew nothing about the plan, the preparation and the execution of the fictitious will. He was well acquainted with and knew that Henke bore a bad reputation in the community. Plaintiff in error frequently accompanied Henke in locating heirs, making proof of heirship and searching for assets. During this investigation they jointly visited the home of Peter Bantz where Henke sought to secure a specimen of the signature of Carl Krzysko and also a photograph of the decedent. Both Mr. and Mrs. Bantz testified that both Henke and Bydalek were present in their home making such inquiry. The conversation is also verified by one Mrs. Bourget who testified concerning the visit, the request for signatures, and the statement that there was definitely a will of the deceased in existence. When the petition to probate the will was prepared, Bydalek signed and swore

to the same. It is difficult to believe that he executed this instrument without knowing something about the contents and the preparation thereof. The distribution made to Bydalek and to his close relatives in the spurious will could hardly have been conceived by Henke without securing information from Bydalek, and he likely would not have drawn the same if he had not had some understanding and arrangement with Bydalek concerning a division of the property or allowance of fees.

All of these facts tend to corroborate the testimony of the witness Henke. The jury had the opportunity of viewing and hearing all of the witnesses, and it was their duty to determine the credibility of such witnesses and the weight of the testimony. This court, having in mind that the testimony of Henke must be regarded with suspicion and acted upon with great caution, cannot say that the proof was so unsatisfactory as to raise a reasonable doubt of the guilt of plaintiff in error.

It is next complained by plaintiff in error that the State's Attorney indulged in prejudicial statements in argument, not based upon the evidence. Particular objection is made because counsel stated in argument to the jury, "Judge O'Connell sent these people to the Grand Jury." An objection to this statement was sustained by the court. Again counsel said, "The examining magistrate bound them over; you need no evidence to sustain that," to which remark objection was sustained by the court. Again counsel said, "You know the 23 Grand Jurors did not leave this building looking for Bydalek." Objection to this statement was overruled. The State's Attorney further said, "They are here, they are indicted, which is in evidence, and they are on trial, and you saw them here." Objections were properly sustained to such remarks and they were neither proper nor based on the evidence, but they were not of such a flagrant character as to warrant a reversal of this judgment for that cause alone.

The plaintiff in error also insists that the trial court committed error in orally instructing the jury as to the law of the case and as to the form of verdict to be used by the jury. The rules of practice and procedure in force in Illinois at the time of trial provided, "In Criminal cases the court shall give instructions to the jury in accordance with section 67 of the Civil Practice Act." (Ill. Rev. Stat. 1941, chap. 110, par. 259.27.) Section 67 referred to, reads, "The court shall give instructions to the jury only in writing and only as to the law of the case." In *Ellis* v. *People,* 159 Ill. 337, and in *Helm* v. *People,* 186 id. 153, convictions were reversed because the court by orally instructing the jury as to the law of the case violated the above statute. In each of these cases there was considerable discussion of the law given orally by the court in submitting forms of verdict. In the present case there is nothing in the record to show that any instructions as to the law were given orally, but even if the submission of the forms of verdict was prefaced by oral remarks contained in the record, there is no instruction as to the law contained therein and no improper comment made by the court. The direction to the jury was as follows: "There are four forms of verdicts. If you find the defendant, Adolph Bydalek, guilty of conspiracy, you may sign one of the following forms." Again, "Or you may sign this form of verdict if you find the defendant, Adolph Bydalek, guilty." And also, "Or you may sign this form of verdict if you find the defendant, Adolph Bydalek, guilty." And, "Or, if you find the defendant, Adolph Bydalek, not guilty, you will sign this form of verdict."

We find no serious objections to the instructions complained of by plaintiff in error. He urges that instructions 9 and 10 contain needless repetition of abstract propositions of law relative to the *quantum* of proof required to justify a conviction of conspiracy. No complaint is made that they do not present correct principles of law, and we

see nothing in them which is unfavorable to plaintiff in error. Objections that other instructions are misleading and tend to confuse the jury are very general and we can find no error in giving the instructions mentioned.

In answer to the complaint that the plaintiff in error was unduly limited in his cross-examination of the witness Henke, it is sufficient to state that such cross-examination began on page 128 of the record and continued on to page 248 and was resumed and finished at page 250.

We find no substantial error in this record and believe that plaintiff in error. was accorded a fair and impartial trial in the criminal court of Cook county. The. facts in evidence were sufficient to sustain the verdict of the jury. The judgments of the criminal court of Cook county and of the Appellate Court are therefore affirmed.

*Judgments affirmed.*