THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAMELA PASTORINO, Defendant-Appellant.

First District (4th Division)    No. 79-2326

Opinion filed November 20, 1980.

Bradley Harris and Bruce Wexler, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Pamela Pastorino, was found guilty of aggravated battery and murder. She was sentenced to serve not less than 20 nor more than 60 years in the penitentiary. The defendant appeals her conviction, alleging that: (1) the trial court erred in orally instructing the jury to consider the verdict of murder before considering the verdict of voluntary man-slaughter; (2) the trial court erred in declaring two witnesses to be court's witnesses; (3) the State improperly imparted substantive character to the prior inconsistent statements of two court's witnesses; (4) the trial court improperly declined to submit to the jury an instruction on voluntary manslaughter (unreasonable belief that use of force was justified); (5) the trial court erred in reopening the case after both sides had rested; and (6) the trial court overstepped the bounds of neutrality in · the way it conducted the trial.

On November 19, 1977, police were called to the home of Leonard Warchol, the defendant's stepfather. They found Warchol dead in the bathtub. An examination of the body revealed six knife wounds and 20 injuries to the head, consistent with having been caused by a pipe. The police recovered from the living room floor two pieces of pipe which contained blood and hair similar to that of the deceased. The cause of death was determined to be stab wounds in association with cranial injury.

The defendant was charged with the murder of her stepfather. The defendant's sister, Debbie Saylor, was also charged with the offense, but the disposition of her case took place in the juvenile court. At the time of trial, Debbie Saylor was in the custody of the Department of Corrections pursuant to an adjudication of delinquency based upon her admission to a petition charging her with the murder.

At the defendant's trial, the State called Danny Saylor, the defend-ant's brother. Danny Saylor's attorney informed the court that Danny would repudiate a prior written statement he had given to the police. The trial judge then stated that if Danny changed his statement, he would be considered a court's witness.

Danny Saylor testified that he saw his sisters at the defendant's home a few hours after the police found Warchol's body. He had a private conversation with them, during which the defendant said that she "got tired of, you know, fighting over little—you know, little stuff." Danny testified that the defendant said nothing about how Warchol died. He

stated that Debbie Saylor told him that Debbie stabbed their stepfather and that the defendant hit him with a pipe. Debbie also said that both she and the defendant were wearing gloves at the time. The defendant was present during this conversation, but said nothing.

The State, over defense objection, sought to impeach Danny Saylor with a prior unsworn statement that he had given the police. In his prior statement, Danny said that the defendant admitted wearing gloves and hitting Warchol with a pipe. On cross-examination, Danny denied the truth of the prior statement and stated that he had been smoking marijuana and drinking before talking to the police.

The State next called Debbie Saylor, the defendant's sister. She invoked her fifth amendment right against self-incrimination and, after being given immunity by the State, still refused to testify.

The State then called Danny Minigh, who testified that he had known the defendant and her brother and sister for several years. Minigh stated that a few months before Warchol's death, the defendant asked Minigh whether he knew anyone who wanted to make $500. When Minigh asked her what the money was for, the defendant "said something about bumping Lennie off." Minigh further testified that he spoke with the defendant and her sister on the night Warchol died. The defendant told Minigh that there had been an argument over making a pizza, that she hit her stepfather with a pipe while he was sitting in a chair, that Debbie stabbed him, and that she was stabbed in the finger while trying to prevent Debbie from further stabbing Warchol. The defendant also told Minigh she and Debbie had disposed of the pipe and gloves they had used. Minigh testified that while attending Warchol's wake, he asked the defendant where she had hit him. The defendant replied, "In the head."

On the following day of the trial, the State again called the defendant's sister, Debbie Saylor. Over defense objection, Debbie took the stand in the presence of the jury. She refused to testify other than to say that she was the defendant's sister. The court advised Debbie Saylor that she would be sentenced for contempt on the following morning. Both sides rested their cases.

The next morning, Debbie Saylor indicated that she decided to testify. The court stated that she would be made a court's witness. The defendant's objection to this procedure was overruled. The judge explained that in the interest of justice the jury should hear Debbie's testimony, since she was an eyewitness to the murder. The judge then reopened the case and allowed both sides to question Debbie.

Debbie Saylor testified that she stabbed Warchol with a knife while he was "looking at T.V." She did not know whether she also hit him with a pipe. Debbie stated that at the time she stabbed Warchol, she thought the defendant was in the basement. She denied planning the murder with the defendant and denied wearing gloves at the time.

Debbie admitted giving a statement to the police which differed from her testimony at the trial. The State's Attorney tendered the witness her prior written statement and questioned her about its contents. In her prior statement, Debbie said that she and the defendant went into the basement together. When they went back upstairs, Debbie took a knife from the kitchen wall which she used to stab Warchol. Debbie stated that the defendant hit Warchol with a pipe.

After Debbie testified, the defendant took the witness stand. The defendant testified that on the night of the murder she went to the house of her mother and stepfather, where she heard an argument between her sister Debbie and her stepfather. The defendant went into the basement. Debbie ran into the basement screaming that she was going to kill Warchol. The defendant then followed Debbie upstairs, where she saw Debbie stabbing Warchol. While trying to stop the stabbing, she was accidentally stabbed in the finger. The defendant testified that she never hit Warchol with a pipe and that she did not see Debbie hit him with a pipe.

Following closing arguments, the jury was given guilty and not guilty verdict forms on aggravated battery, voluntary manslaughter and murder. The judge then made the following remarks:

"I will go back and explain this to you in a very slow manner so you won't get confused. * * * [Y]ou have a voluntary manslaughter [verdict form] and you have [a] murder [verdict form]. An individual cannot be guilty of both of them, so what you will have to do is consider the murder verdict. When you have reached your verdict as far as the murder is concerned, it's either guilty or not guilty. If you find the defendant not—guilty of murder, you may—you do not have to do anything else. *If you find her guilty of murder, then you don't have to consider the voluntary manslaughter* because you have already found her guilty of murder. So, you will come back just with the guilty of murder filled out.

If you find her not guilty of murder, then you will consider the voluntary manslaughter. * * * You must come back with one verdict on the aggravated battery. Now, between the murder count, *if you find her guilty of murder, then you do not consider voluntary manslaughter*. And if you find her not guilty of murder, then you must consider voluntary manslaughter. O.K." (Emphasis added.)

On the third day of deliberations, the jury returned verdicts of guilty of murder, not guilty of voluntary manslaughter, and guilty of aggravated battery.

The defendant contends that the trial court erred in orally instructing the jury to consider the murder instruction before the instruction on

voluntary manslaughter. She claims that the judge's remarks had the effect of nullifying or at least deemphasizing the voluntary manslaughter instruction.

■■ The record shows that the trial judge told the jury to consider the murder verdict first. If they found that the evidence supported that theory, they were not even to consider the manslaughter theory. This seems to indicate a clear preference for a verdict of murder if there was evidence at trial of both murder and manslaughter. However, it has been held that where there is evidence in the record which would support both a theory of murder and a theory of manslaughter, the jury must be given a choice of which crime was actually disclosed by the evidence. (*People v. Papas* (1942), 381 Ill. 90, 44 N.E.2d 896; *People v. Canada* (1962), 26 Ill. 2d 491, 187 N.E.2d 243.) If the judge fails to instruct on voluntary manslaughter, thus eliminating the element of choice, the defendant must be given a new trial. *People v. Guthrie* (1970), 123 Ill. App. 2d 407, 258 N.E.2d 802.

■■ We believe that the situation here is analogous to one in which the judge failed to instruct the jury on voluntary manslaughter. The judge's comments had the effect of taking away from the jury the necessary element of choice of deemphasizing the importance of the manslaughter verdict. The defendant was therefore deprived of her right to have the jury choose between murder and voluntary manslaughter where there was evidence in the record supporting both verdicts. For this reason, she should receive a new trial.

The State argues that even if the trial court's remarks were improper, they were merely brief explanatory comments which did not result in prejudice to the defendant.

■■■ It is the rule in criminal cases that the jury is to be instructed only in writing and only as to the law of the case. (Ill. Rev. Stat. 1979, ch. 110, par. 67.) While brief explanatory remarks concerning the form of verdict are permissible (*People v. Bydalek* (1942), 381 Ill. 330, 45 N.E.2d 849), comments which amount to instructions on the law of the case constitute reversible error (*Ellis v. People* (1896), 159 Ill. 337, 42 N.E. 873; *People v. Sartin* (1935), 361 Ill. 571, 198 N.E. 674). It does not appear that the statements here can be categorized as "brief explanatory remarks." Rather, it is entirely possible that the judge's admonition to the jury to consider the murder verdicts before the manslaughter verdicts had a direct impact on the deliberations of the jury. We believe that these remarks exceed the permissible level of explanation and therefore constituted improper oral instructions.

The State further contends that the defendant waived this issue for purposes of review because she failed to object to the remarks of the trial judge. The failure to enter a timely objection generally constitutes a waiver of error. (*People v. Adams* (1968), 41 Ill. 2d 98, 242 N.E.2d 167.)

However, a court of review may consider plain errors or defects affecting substantial rights of a defendant even where they were not raised in the trial court. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196.) Since we believe that the remarks of the trial court may have caused substantial prejudice to the defendant, we conclude that they constituted plain error and may therefore be considered on appeal.

The State further contends that the defendant precipitated the court's comments by specifically requesting that the jury be told that they could not find the defendant guilty of both murder and voluntary manslaughter. Therefore, the defendant should not be permitted to claim that the comments were error. There is no question that the court's remarks went far beyond the simple instruction requested by the defendant. We are not persuaded that the defendant encouraged these remarks. Therefore, she should not be precluded from claiming that they constituted error.

The defendant alleges various trial errors, some of which are likely to recur in a new trial. We will therefore consider these issues.

The defendant contends that the trial court erred in allowing Danny Saylor and Debbie Saylor to testify as court's witnesses. The defendant alleges. that the procedure was employed for the express purpose of enabling the State to read the witnesses' inconsistent statements to the jury under the guise of impeachment. Since this matter must be retried, and the exact circumstances leading to the calling of each of the witnesses as court's witnesses will not be duplicated, we need not look to the specific past circumstances. However, we should comment on the calling of these witnesses upon retrial.

The requirements for calling a court's witness are clearly stated in *Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 354 N.E.2d 381. The moving party must show that it cannot vouch for the witness' veracity, that the witness could offer testimony which is relevant to the direct issues in controversy and that a miscarriage of justice might occur if the testimony is not brought to the attention of the trier of fact. Those requirements have been modified, as the defendant argues, by the prohibition against placing a witness on the stand merely as a device for placing before the jury a prior statement under the guise of impeachment. (*People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611.) Underlying the court's witness concept is the position adopted in Illinois, but not in all jurisdictions, that only the testimony given by the witness upon oath in court, subject to cross-examination, is substantive evidence, and that prior contradictory statements of a witness are received solely for the purpose of impeachment. (*People v. Collins* (1971), 49 Ill. 2d 179, 194, 274 N.E.2d 77, 85.) The problem presented in

the case at bar is under what circumstances may the State present out-of-court statements for the limited purpose of impeachment where the witness is called as a court's witness. For practical reasons, instructing the jury of the limited purpose of the testimony is not wholly satisfactory to the defendant because of the difficulty the jury may experience in considering the evidence only for impeachment but not as substantive evidence of guilt. *People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689.

Because of their relation to the defendant and to the events here, both Danny and Debbie Saylor had valuable information which the State wished to present to the jury. For various reasons, however, the State believed that their testimony at trial would differ from prior statements that they had given the police. The State asserted that it could not vouch for the veracity of the witnesses and asked that they be called as court's witnesses. As suspected, the witnesses' testimony differed from their out-of-court statements, and the State impeached them with the prior statements.

Upon retrial, we do not believe that the witnesses should be questioned as court's witnesses about their out-of-court statements. This is so for two reasons. First, the State is no longer in a position to argue that it cannot vouch for the veracity of the witnesses. The State is only unable to vouch for a witness' veracity where it does not know what the witness will testify to. Here, because of the prior trial, the State knows what the witnesses will testify to. If it does not wish to place this testimony before the jury, it should either refrain from calling the witness or limit the questioning to other areas. The State's knowledge of what the witness will say need not come with the certitude of a prior trial. A situation may well arise, as it may have arisen here although it is not entirely clear, where prior to the witness testifying the court is informed by either the witness or counsel that the witness will not testify in the manner that the State anticipates the witness will testify. The second reason for which this testimony fails follows as a corollary from the first, that is, to present a witness where it is known that the witness will not testify in court under oath as to what the witness stated on a prior occasion is a device to place before the jury a prior statement under the guise of impeachment.

It is conceivable that upon a retrial there may be areas of inquiry not brought out in the first trial where it is not known what the witness will say and the requirements for calling a court's witness will be met. If that situation should arise we believe we should point out that merely because a witness is placed on the stand it does not automatically follow that the witness may be impeached in the event the witness fails to testify in the manner anticipated. The testimony of a court's witness generally falls into two distinct categories. In one situation, for example, the State expects the

witness to testify, in a manner consistent with his out-of-court statement, that the defendant admitted to the witness that the defendant had committed the crime. Instead, the witness fails to confirm his prior statement. The consequence of this is that the State is merely disappointed by the witness' testimony. By simply failing to confirm his prior statement, the witness is not placing before the jury any new evidence which would be damaging to the State. Under these circumstances, the witness may not be impeached because there is no evidence on which to impeach him.

The second situation arises where instead of simply failing to confirm his prior statement, the witness presents the jury with new evidence, such as providing the defendant with an alibi. If the jury believes this testimony, the State would be affirmatively damaged rather than merely disappointed. Under these circumstances, the State should be allowed to impeach the witness with his prior inconsistent statement. See Cleary & Graham, Handbook of Illinois Evidence §607.4, at 271 (1979).

The prior inconsistent statement of a witness may be introduced at trial as a means of impeaching the witness' credibility. (*People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689.) Although some jurisdictions allow the prior written statement of a witness who testifies at trial to be used as substantive evidence, the law in Illinois is well established that such statements are to be limited to the purpose of impeachment and cannot be used as substantive evidence of the defendant's guilt. (*People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77.) The courts have recognized certain safeguards which serve to minimize the risk that a jury will improperly consider a prior inconsistent statement as substantive evidence. For example, the statement should not be unduly emphasized or repeated. Also, the jury should be carefully instructed to limit consideration of the prior statement to its proper use as impeachment evidence. (*Paradise*, 30 Ill. 2d 381, 385, 196 N.E.2d 689, 691.) In the following passage from *People v. Fields* (1975), 31 Ill. App. 3d 458, 470, 334 N.E.2d 752, 762, the court emphasized the importance of these safeguards and noted that it is the duty of the trial court to see that they are employed:

"To that end, the trial court must take care to insure that the statement is not being offered substantively under the guise of impeachment; that the statement is not presented to the jury in detail, in question and answer form; and that the jury is specifically instructed that the statement is not admitted as substantive evidence, but only for the purpose of impeaching the credibility of the witness."

In our view, the record demonstrates that the trial court failed to adequately minimize the risk that the jury would consider the prior

inconsistent statements of Danny and Debbie Saylor as substantive evidence of the defendant's guilt. The State's extensive use of the prior statements covers several pages in the record. It appears that the statements were read to the witnesses line by line and in a very detailed question and answer format. Also, portions of Debbie Saylor's otherwise inadmissible prior statement were repeated almost verbatim by the State's Attorney in his closing argument. We therefore conclude that the State's conduct in impeaching Danny and Debbie Saylor with their prior inconsistent statements was improper.

The defendant argues that the trial court erred in refusing to submit to the jury an instruction stating that the defendant could be found guilty of voluntary manslaughter if she believed that the force used was justified, but that belief was unreasonable.

Where there is some evidence in the record that would reduce the crime from murder to manslaughter, a manslaughter instruction must be given. (*People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315.) This is true even though the defense at trial is inconsistent with the possibility that the defendant is guilty of the lesser offense. (*People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446.) Here, Danny Minigh testified that he had a conversation with the defendant and her sister concerning Leonard Warchol's death. According to Minigh, the defendant stated that:

> "* * * they were arguing about a pizza, that Lennie had jumped into Debbie about making a pizza and that she had struck him with a pipe and that Debbie had stabbed him, and that she was trying to stop Debbie from stabbing him, and Debbie stabbed her in the finger with a knife."

Danny Saylor also testified that there was a fight over pizza.

From this evidence, the jury may have believed that Warchol was engaged in an altercation with the defendant's sister and that the defendant came to her sister's defense and used force which she unreasonably believed was justified. We believe that this evidence warranted the voluntary manslaughter instruction requested by the defendant.

The other issues raised by the defendant are not likely to occur in a subsequent trial and therefore require no discussion.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.