THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES EARL WOOD, Defendant-Appellant.

Fourth District No. 4—84—0030

Opinion filed November 30, 1984.—Rehearing denied December 27, 1984.

Daniel E. Radakovich, of Chicago, and Timothy P. O'Neill, of Oak Park, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, James Earl Wood, was convicted in a jury trial of murder and aggravated battery and sentenced to concurrent 30-year and five-year terms of imprisonment. The convictions stemmed from the defendant's fight with two brothers, in which the defendant killed one and injured the other. At trial the defendant argued that he had fought in self-defense; the jury was instructed on voluntary manslaughter. On appeal the defendant argues that the trial court improperly restricted his testimony about his state of mind, that the instructions on voluntary manslaughter are improper, that the prosecutor, in his closing argument, misdirected the jury on the sequence in which to consider the verdict forms for the offenses of murder and voluntary manslaughter, and that the prosecutor elicited prejudicial testimony regarding the manner in which the defendant surrendered himself to law enforcement officers. We affirm.

The defendant was charged by information on August 17, 1983, with the murder of Charles "Tony" Hambleton and the attempted murder of Terry Hambleton, his brother. The evidence presented at trial showed that the defendant, while armed with a knife, fought with the Hambletons at about 5 a.m. on August 14, 1983, at a night-long party in a rural part of Macon County. At trial the defendant admitted killing Tony Hambleton and injuring Terry Hambleton; the focus of the trial was on the defendant's asserted use of self-defense and on his possible motive for fighting with the Hambletons. The defendant belonged to the same motorcycle club, the D.C. Eagles, that Tony Hambleton had once been a member of. At the time of his death, Tony still bore a tattoo of the club's insignia on his chest over his heart, and on several occasions, including the night when the fight occurred, the defendant told Tony to have the tattoo removed. At the defendant's request, the jury was instructed on voluntary manslaughter in addition to murder and on aggravated battery in addition to attempted murder. The jury returned verdicts finding the defendant guilty of murder and aggravated battery and not guilty of voluntary manslaughter and attempted murder.

I

■■ The defendant argues first that the trial court improperly limited his proof of his state of mind at the time of the occurrence here, which was an issue in the case because of his assertion of self-defense (*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111). In the course of testifying about how he felt when the fight began and what he feared, the defendant referred to a beating that he had suffered at an earlier time. The State objected to any description of this, and an offer of

proof showed that it had occurred more than five years earlier, in July 1978, when the defendant was beaten outside his house by two men, neither of whom was involved in any way here. As a result of the beating the defendant was in the hospital for eight days; defense counsel presented photographs depicting the defendant's injuries. In seeking to exclude this evidence the State argued that the defendant should be allowed to say only that he had been beaten before, without providing any testimonial or photographic proof of the details. The trial judge sustained the State's objection. Thus, the jury heard no more than the bare statement that the defendant had been beaten before.

*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378, which the defendant cites in support of his argument, is inapposite. *Lockett* held that a jury in a murder trial cannot be instructed on self-defense without also receiving an instruction on voluntary manslaughter. To give one but not the other would impinge on the jury's function, as trier of fact, of determining first whether the defendant believed that he was acting in self-defense and, if so, whether the belief was reasonable or unreasonable. The defendant reads this language in *Lockett* broadly and interprets the case as precluding, when self-defense is raised, all restrictions on a defendant's testimony of what constituted or influenced his state of mind at the time in question. *Lockett* did not address that problem, however, and did not discuss what evidence is relevant to an assertion of self-defense.

The defendant also cites three cases in which the appellate court found reversible error in a trial court's restriction of a defendant's state-of-mind testimony where self-defense was raised. (*People v. Christen* (1980), 82 Ill. App. 3d 192, 402 N.E.2d 373; *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85; *People v. Williams* (1977), 45 Ill. App. 3d 338, 359 N.E.2d 736.) In only *Williams*, however, did the trial court prohibit anything more than just the defendant's description of the threat that he perceived from the victim. In that case the defendant proposed to testify about other occurrences involving different assailants, in addition to his fear of the particular victim, and the trial judge prohibited all of this. In reversing that decision the appellate court said broadly that the defendant had to be allowed to explain his state of mind; the court did not distinguish, and was not called upon to distinguish, testimony of the defendant's fear of the victim from testimony of his encounters with others.

We conclude that the trial court here correctly restricted the defendant's testimony about the earlier, unrelated beating. Details of that occurrence were irrelevant; introducing them into evidence would

only have distracted the jury's attention from the fight that occurred here. In *People v. Ruel* (1970), 120 Ill. App. 2d 374, 256 N.E.2d 672, the defendant was convicted of the murder of a police officer; the jury had been instructed on self-defense and voluntary manslaughter. On appeal, the defendant argued that he should have been allowed to describe to the jury his earlier encounters with other police officers, which he believed were relevant to his state of mind. *Ruel* rejected this, saying:

"Clearly, prior encounters with the victim may be relevant where one asserts a defense of self-defense. However, to permit testimony of prior encounters with other officers not involved in the incident in question, would open the door to irrelevant, collateral and unconnected matters. Such evidence would not be helpful, and could only serve to confuse a jury. The evidence must be confined to the matters in issue under the general rule of relevancy. [Citation.]" 120 Ill. App. 2d 374, 379, 256 N.E.2d 672, 675.

For the same reasons, details of the earlier beating here were properly excluded from evidence. Had the earlier beating been inflicted by someone involved in the fight here, then more detailed testimony might have been proper. (See *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262.) The defendant was allowed to testify that he had been jumped or beaten before, and we are not called upon to decide whether that testimony was appropriate. Further details of that unrelated occurrence would have exceeded the proper scope of state-of-mind testimony, and they were properly excluded.

## II

The defendant was charged with murder, and at his request the jury was instructed on the less serious offense of voluntary manslaughter in its two forms: that he was "acting under a sudden and intense passion resulting from serious provocation" (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)), and that "at the time of the killing he believe[d] the circumstances to be such that, if they existed, would justify or exonerate the killing *** but his belief [was] unreasonable" (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)). With respect to the latter form of voluntary manslaughter, the belief relied on here was self-defense (see Ill. Rev. Stat. 1983, ch. 38, par. 7—1). At the defendant's request, the trial judge gave the jury the standard definitional and issues instructions for the two forms of voluntary manslaughter: Illinois Pattern Jury Instructions (IPI), Criminal Nos. 7.03 and 7.04 (provocation), and Nos. 7.05 and 7.06 (unreasonable belief) (2d ed. 1981). Also,

the court instructed the jury on self-defense, IPI Criminal No. 24–25.06 (2d ed. 1981), and inserted in the issues instruction for murder (IPI Criminal No. 7.02 (2d ed. 1981)) the additional proposition, taken from IPI Criminal No. 24–25.06A (2d ed. 1981), requiring the State to prove that the defendant had acted without justification.

 The defendant now argues that the two issues instructions on voluntary manslaughter are improper because they require that the extenuating circumstances necessary to reduce murder to voluntary manslaughter be proved by the State. As Judge Green observed in his special concurrence in *People v. March* (1981), 95 Ill. App. 3d 46, 61, 419 N.E.2d 1212, 1223 (Green, J., specially concurring);

> "[V]oluntary manslaughter includes all of the elements of murder and in addition the elements of provocation or unreasonable belief ***. Accordingly, although an accused may have been proved guilty beyond a reasonable doubt of voluntary manslaughter, the State has thereby literally met all of the requirements of IPI Criminal No. 7.02 to sustain a charge of murder."

Requiring that the State prove the extenuating circumstances is an incongruous burden in a prosecution for murder, the defendant believes, for there the State has no interest in proving anything other than murder; under our current statutory definitions, voluntary manslaughter may be described as murder plus mitigation, and the State will not go on to prove the additional, extenuating elements once its proof of murder is complete. Furthermore, the defendant contends, it is useless for an accused to present evidence of the extenuating circumstances if the instructions require that they be proved by the State. (See Haddad, *Allocation of Burdens in Murder-Voluntary Manslaughter Cases: An Affirmative Defense Approach,* 59 Chi.-Kent L. Rev. 23 (1982); O'Neill, *"Murder Least Foul": A Proposal to Abolish Voluntary Manslaughter in Illinois,* 72 Ill. B.J. 306 (1984); O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary,* 32 De Paul L. Rev. 107 (1982).) The defendant also believes that the instructions violate the due process and equal protection provisions of the Illinois and Federal constitutions.

We agree with the defendant that these instructions should be reexamined. The State responds at the outset, however, that this question has been waived here because a defendant may not normally object on appeal to instructions that were given at his request. (*People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472; *People v. Kelley* (1969), 105 Ill. App. 2d 481, 244 N.E.2d 818). To preserve his objection to a jury instruction, a defendant must make the objection in the trial court and tender the correct instruction. (*People v. Huckstead* (1982),

91 Ill. 2d 536, 440 N.E.2d 1248.) Therefore, the defendant has waived this question unless "the interests of justice require" otherwise. 87 Ill. 2d R. 451(c).

That requirement has not been met here. The State presented strong and undeniable evidence that the defendant was guilty of murdering Tony Hambleton. The evidence that there was provocation or that defendant acted with an unreasonable belief of self-defense was, at best, weak.

According to Terry Hambleton and Danny Bridgeman, a friend who had accompanied the Hambleton brothers to the party and was with them when the fight occurred, neither they nor Tony Hambleton was armed. They testified that the fight began when the defendant and another person attacked them. Tony Hambleton suffered 11 wounds, all of which could have been caused by a knife; the one fatal wound was to his heart. Terry Hambleton had a single stab wound to his stomach, and from this, seven holes had been made in his small bowel. Bridgeman was stabbed under the armpit. When the defendant surrendered himself to law enforcement officers, his only visible wound was a 1½-inch-long laceration below his left thumb. According to Terry Hambleton, the defendant had confronted Tony about the club tattoo immediately before the fight began.

The defendant admitted that he had mentioned the tattoo to Tony Hambleton several times, including the night when the fight occurred. The defendant denied that he was an enforcer for the motorcycle club, however. He and a friend, John Lancaster, testified that the Hambleton brothers and Bridgeman initiated the fight by jumping the defendant. According to the defendant, Tony Hambleton was not armed, but Terry Hambleton and Bridgeman were. According to Lancaster, the Hambletons and Bridgeman were not armed. Another witness indicated that he learned later that Bridgeman had had a gun and knife with him that night; this was contradicted.

The defendant had warned Tony previously about the tattoo, and this appeared to be his motive for attacking Tony on the night in question. Although the defendant asserted that he was jumped by the Hambleton brothers and Bridgeman, he was wounded only slightly in the fight. We conclude that the defendant was proved guilty of the offense of murder beyond a reasonable doubt and that the interests of justice do not require our consideration of the alleged errors in the jury instructions.

### III

The defendant next argues that the prosecutor, in his clos-

ing argument, misdirected the jury on the sequence in which to consider the verdict forms for murder and for voluntary manslaughter. The prosecutor said:

"Now when you are provided with both a murder and voluntary manslaughter instruction for the death of Charles [*i.e.*, Tony] Hambleton, if you find the defendant guilty of murder, then you should not return a guilty verdict of voluntary manslaughter also. If you find the defendant guilty of murder, then he should be found not guilty of voluntary manslaughter. And the reason is because that is a lesser offense of murder."

Defense counsel did not object to this statement.

The defendant believes that the quoted remark confused the jury and finds evidence of this in the following note, which the jury sent the trial judge near the end of its deliberations:

"If the defendant is found guilty on the greater charge must we also fill out a form on the lesser charge? Foreman. 11/17/ 83."

The parties agreed that the court did not need to respond to the question, and no response was made. The jury had been provided with guilty and not-guilty verdict forms for each of the offenses; as it turned out, the jurors filled out the forms finding the defendant guilty of murder and not guilty of voluntary manslaughter.

The defendant argues that because voluntary manslaughter is murder plus mitigation, the prosecutor's statement may have caused the jury to stop deliberating once it decided that the defendant committed murder; this would have prevented the jury from considering the additional, extenuating circumstances that characterize voluntary manslaughter. The defendant relies on *People v. Pastorino* (1980), 90 Ill. App. 3d 921, 414 N.E.2d 54, *rev'd on other grounds* (1982), 91 Ill. 2d 178, 435 N.E.2d 1144. In *Pastorino* the trial judge made several comments to the jury on the relationship between murder and voluntary manslaughter and then said, " '[i]f you find [the defendant] guilty of murder, then you don't have to consider the voluntary manslaughter* because you have already found her guilty of murder.' " (*People v. Pastorino* (1980), 90 Ill. App. 3d 921, 924, 414 N.E.2d 54, 58.) The appellate court held that this remark, which defense counsel had not objected to, was plain error, for its effect was to deprive the jury of a choice between the two offenses. Accordingly, the appellate court found that a new trial was necessary. The supreme court concluded that the issue had been waived. Apparently the trial judge's comment stemmed from a suggestion by defense counsel that the jury be told not to return verdicts finding the defendant guilty of both of-

fenses, and the supreme court noted that the trial judge could have clarified his statements had a timely objection been made.

The State argues that the same result, waiver, should obtain here, for defense counsel did not object to the remark. We agree. We think also that the remark did not deprive the jury of a choice between the two offenses, and we disagree with the defendant's interpretation of it. The prosecutor said only that the jurors should not fill out the verdict form of guilty for voluntary manslaughter if they were also finding the defendant guilty of murder. This correctly reflected the rule that if a jury returns guilty verdicts for both offenses, judgment should be entered only on the verdict for voluntary manslaughter, for that operates as an implied acquittal of the murder charge. (*People v. Kendricks* (1984), 121 Ill. App. 3d 442, 459 N.E.2d 1137.) The prosecutor correctly explained that guilty verdicts for both offenses should not be returned. In stating that, he did not suggest to the jury that it should consider the more serious offense, murder, first.

## IV

The defendant's last argument concerns testimony that he was accompanied by a lawyer when he surrendered himself to law enforcement officers. In cross-examining Macon County sheriff's deputy Bradley Collins, defense counsel elicited the information that the defendant went to the sheriff's office and turned himself in voluntarily. In redirect examination the prosecutor then asked the following question:

"Q. Did Mr. Wood turn himself in by himself?

[Defense Counsel]: Object, leading.

THE COURT: Overruled, he can answer.

A. He was with Mr. Glenn Fuller, attorney in this city."

Defense counsel then moved for a mistrial, arguing that the testimony was an improper comment on the defendant's constitutional right to counsel. The motion was denied.

Relying on *People v. Gacy* (1984), 103 Ill. 2d 1, 468 N.E.2d 1171, the State argues that the testimony was proper. In *Gacy*, in attacking the defendant's insanity defense, the State brought out the information that the defendant had talked to his lawyer the night before he presented the defense to the police. The supreme court held that it was proper for the State to use that evidence as proof that the defense was not genuine.

The testimony here seems to have no purpose except to imply the defendant's guilt or consciousness of guilt. But it was brought only in response to the information that the defendant had voluntarily surren-

dered himself. Whatever error occurred was harmless. No further mention of the information was made, either in testimony or in closing argument.

Affirmed.

MILLS, P.J., and GREEN, J., concur.