THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD FRANKLIN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—3608

Opinion filed April 4, 1990.

Randolph N. Stone, Public Defender, of Chicago (Callie Baird and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Jane E. Loeb, and Michael J. Drake, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:
Defendant Leonard Franklin was charged with two counts of murder and one count of armed violence for the killing of George Smith. Following a bench trial, defendant was convicted of voluntary manslaughter and was sentenced to an eight-year prison term. On appeal he contends: (1) the trial court erred in barring testimony concerning a seven-year-old incident in which defendant was stabbed, where that incident was probative of defendant's state of mind at the time of the killing of George Smith; (2) the State failed to prove beyond a reasonable doubt that defendant was not acting in self-defense; and (3) defendant's eight-year prison term was an abuse of discretion.
We affirm.
It was undisputed at trial that, during an argument, defendant stabbed George Smith with a knife, causing wounds which resulted in

Smith's death two weeks later. Defendant asserted that he had acted in self-defense. Defendant's wife, testifying for the State, stated that she lived at 5959 Ohio in Chicago with defendant and his mother, Mary Brown. George Smith would come to the house to visit defendant's mother and to work on cars in the garage. On a number of such occasions defendant had complained about the fact that Smith parked his truck in such a manner as to block defendant's access to the garbage cans. On May 22, 1987, at about 9:45 a.m. Mary Brown saw defendant and Smith arguing in her living room. Defendant was telling Smith that he had previously asked him to move the van so he could get the garbage out. Smith told defendant that he had told him not to bother his van. He also told him, twice, that if he did not stay away from the van Smith would "get" him. This conversation ended after 10 minutes, when defendant went and sat on the back porch. Smith then also walked to the back of the house. Mrs. Franklin walked out and saw Smith talking to defendant with his finger pointed at defendant's face. Smith told defendant several times that he should not touch anything in the garage or Smith would get him. Defendant pushed Smith's hand away from his face, and the two men began hitting each other. Mrs. Franklin ran into the house for help and then came back out to find the two men rolling on the ground, still fighting. She returned to the house and again came out, this time hearing Smith saying he had been stabbed. Smith was lying on the ground, and defendant was standing a few feet away. Defendant obtained the keys to their car from Mrs. Franklin and drove off.

Mrs. Franklin never saw a weapon in either man's hand. However, she did testify that the evening before, defendant had been cleaning fish with a butcher knife on the back porch. Defendant's uncle, Willie Brown, also a State witness, testified that he came outside after the stabbing and saw defendant with a knife in his hand. He saw no weapon on or near Smith.

Police testimony established that defendant drove to a police station and told the desk sergeant he thought he had just killed somebody by stabbing them. He then gave the police the address. George Smith told police at the scene that defendant had stabbed him after an argument. It was stipulated that Smith died on June 6, 1987, and his death was caused by a stab wound to the abdomen.

Defendant testified that on the morning in question he saw Smith outside the house and asked him to move the truck so he could take out the garbage. Because the truck blocked his path, defendant had left four or five bags of garbage on top of the truck. Smith told him that the next time he put garbage on the truck Smith would make

him remove it. He also said if defendant did it again he would do "something" to him. Inside the house, Smith again encountered defendant and began saying something to him. When defendant went outside, Smith followed him and told him to take the garbage off the truck. Instead, defendant retrieved the bucket and knife he had used to clean the fish the night before and washed off the knife on the back porch. The truck had now been moved, so he threw out the fish entrails in the garbage can in back. At Smith's request, he brought a broom to Smith in the garage. As defendant walked away, Smith began cursing him, but defendant testified he was not interested in what Smith was saying.

Defendant went to the back porch and sat down on the steps one foot away from the knife he had cleaned. Smith approached, swearing and saying he would "mess up" defendant and that he would "do something" to him. Smith reached his hand out toward defendant, and defendant deflected it, losing his balance in the process. Defendant then picked up the knife and stabbed Smith once. He testified that he did so because he was afraid Smith was going to hurt him. Smith grabbed him but he pushed himself free. When Smith began walking toward the garage, defendant thought Smith had something he would hurt him with so he grabbed Smith and they fell to the ground. When he saw that Smith had no weapon, defendant got the car keys from his wife and drove to the police station, where he reported the stabbing. Defendant admitted that in the statement he gave to the police he did not say that Smith had swung at him before the stabbing.

According to defendant he had seen Smith in the garage with a .38 caliber revolver one year before this incident. However, when asked if he feared Smith had a weapon when Smith approached him, defendant responded: "I feared he might have had something. I don't know what it might have been." He stated that Smith had been in the garage, where there were hammers and pipes and, although he saw nothing in his hand, this did not mean he could not have had something in his back pocket. Defendant also testified that seven years earlier he had been stabbed. The trial court sustained a State objection to any further testimony concerning this prior incident.

Based on all of this evidence, the trial judge found that defendant may have believed his actions were justified but that belief was unreasonable. He therefore found defendant guilty of the lesser included offense of voluntary manslaughter and subsequently sentenced defendant to an eight-year prison term for this offense.

## I

Defendant contends that the trial court erred in barring defendant's testimony concerning the details of a stabbing that had occurred seven years prior to this incident. In an offer of proof, defense counsel stated:

"[Defendant] would say that in 1980 an individual approached him, spoke to him, stabbed him about the body. He still bears the scars from that woman. He was stabbed in several places, and prior to being stabbed and even as he was being stabbed, he never saw the knife during that dispute."

Defendant asserts that this testimony would have been probative of his state of mind at the time of his encounter with George Smith and therefore it was reversible error to exclude it. Defendant relies upon the cases of *People v. Williams* (1977), 45 Ill. App. 3d 338, 359 N.E.2d 736, and *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185. However, we do not find those cases dispositive of the issue before us. In *Williams* the defendant had encountered four or five men who demanded that he buy them wine at a store several blocks south. Defendant bought the wine and returned to the men, who then robbed him at gunpoint and told him to leave. As he left, one of the men told him to return. Defendant then fired at them, killing one man. The trial court barred defendant from answering questions about whether he was forced to go to the store and why he did not keep walking south after going to the store, stating that "there is no way that defendant could show what is in his mind." (*Williams*, 45 Ill. App. 3d at 342.) A subsequent offer of proof indicated defendant would have testified he returned to the men because he was afraid they would pursue him and hurt him in the same manner that another group had two days before this incident. He also would have testified that he had previously been robbed or assaulted over a dozen times and seriously wounded by knife or gunshot three or four times. In finding defendant guilty of voluntary manslaughter, and rejecting defendant's claim of self-defense, the trial court specifically relied on the fact that defendant chose to return to the group of men. Based on all of these facts, the reviewing court held the trial court committed reversible error in barring evidence of defendant's state of mind.

In *Suerth* defendant was convicted of involuntary manslaughter after testifying that he heard noises in the hallway of his building at 5 a.m., took a gun to investigate, saw two men he could not recognize in the vestibule, and accidentally shot one of the men when they made a sudden move. The reviewing court found it was reversible error to bar defendant from testifying, on the issue of his state of mind and

the reasonableness of his actions, that in the two years preceding this shooting there had been frequent break-ins, burglaries, and arsons in his building and in particular in the vestibule where this shooting took place.

We do not find that either of these cases holds that a trial judge is bound to admit evidence of prior incidents, no matter how unrelated or remote in time they are, involving a defendant in a murder case where that defendant is attempting to support the reasonableness of his actions. The *Williams* court correctly found that a trial court erred in holding that a defendant pleading self-defense could not testify concerning his state of mind. The reviewing court was not required to identify with particularity the aspects of defendant's offer of proof that it would have permitted. Clearly some of that proposed testimony concerned matters that were very close in time and relevant to the incident in question. The defendant would have testified that he had been attacked by another group only two days earlier. Similarly, the excluded evidence in *Suerth* concerned burglaries and other offenses committed in the very same vestibule where the shooting in question took place, and occurring within two years prior to that shooting.

■ In this cause the trial judge, unlike the trial judge in *Williams*, did permit testimony concerning past events affecting defendant's state of mind at the time of the stabbing, including testimony that he had previously seen the victim with a gun and testimony that he had previously been the victim of a stabbing. The trial judge merely exercised his discretion in excluding the details of that stabbing, which had occurred seven years earlier and which was not connected in any manner to the victim of the stabbing at issue. In *People v. Wood* (1984), 129 Ill. App. 3d 29, 471 N.E.2d 1060, the defendant fought with two men and killed one of them with a knife. He was permitted to testify, in support of his claim of self-defense, that he had been beaten at an earlier time by two men, but he was not permitted to give any further details. The beating occurred five years earlier and involved two men not involved in the incident at issue. On appeal the reviewing court held this to be a proper exercise of the court's discretion because the details of the prior incident were irrelevant. We find that in this cause the trial court also properly exercised its discretion to allow testimony of the fact of the prior stabbing but to bar any details concerning that unrelated occurrence.

## II

Defendant next contends that the State failed to prove beyond a

reasonable doubt that he did not act in self-defense when he stabbed George Smith.

■■ ■ Illinois law provides that a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm. (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.) Under the statutory scheme applicable at the time of trial, one who killed another in the unreasonable belief that he was justified under these principles of self-defense would be guilty of voluntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).) Furthermore, once a defendant introduced some evidence of self-defense, the State bore the burden of proving beyond a reasonable doubt that the use of deadly force was not justified. (*People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001.) The question of the reasonableness of a defendant's belief that deadly force was required is a question of fact, and the trial court's resolution of that issue, as the finder of fact, will be reversed on appeal only if so unsatisfactory or improbable as to raise a reasonable doubt of defendant's guilt. *People v. Florey* (1987), 153 Ill. App. 3d 530, 505 N.E.2d 1096.

■ In this cause, the defendant testified that when he stabbed George Smith he was afraid that Smith might harm him. He also testified that he had seen Smith with a gun a year earlier and that he himself had been stabbed in the past. But defendant saw no gun or knife on Smith, nor did he even testify that he believed Smith had such a weapon. He testified only that he believed Smith might have "something," but he could not specify what that something could have been. Under these circumstances, we believe the trial court was justified in finding that although defendant may have believed his actions were justified under the law, that belief was unreasonable.

### III

We find no merit to defendant's contention that his sentence was an abuse of discretion. At the sentencing hearing defendant introduced evidence of his support for his family, his successful battle with a drinking problem, the availability of employment should he obtain probation, and his prior military service. But there was also evidence before the trial court indicating that defendant had a history of resorting to violence when angered. In 1980 he had pleaded guilty to battery, receiving supervision, after having struck a bus driver in the face after quarreling with him. His wife testified that on at least three occasions he had struck her. The last incident, occurring in 1985, had left her with bruises and abrasions. Although she testified

that these incidents occurred when defendant still had a drinking problem, these were still matters which the trial court could properly take into consideration.

■■ The court stated that it had considered the presentence investigation report and the testimony presented. The court found that given defendant's "track of violence," a sentence of probation would deprecate the seriousness of his offense. The eight-year sentence he received was well within the statutory range of 4 to 15 years for such an offense. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(4).) We do not find it to be an abuse of discretion and therefore will not disturb it on appeal. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

The judgment of the trial court is affirmed.

Affirmed.

CERDA, P.J., and FREEMAN, J., concur.