THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LINDSAY CANNON, Defendant-Appellant.

First District (4th Division)   No. 1—86—3164

Opinion filed October 20, 1988.—Rehearing denied December 1, 1988.

Karen Daniel, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Lynda A. Peters, and Joseph G. Laspisa, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Lindsay Cannon, and codefendants Andre Johnson

and Preston Adams were jointly indicted and tried before a jury for murder and conspiracy to commit murder. This appeal concerns Cannon, who was found guilty of murder and conspiracy to commit murder and sentenced to natural life. The codefendants were found not guilty of murder but guilty of conspiracy to commit murder. Cannon's appeal raises issues concerning jury instructions, severance, and certain other trial errors.

Prior to trial, Cannon made a motion for severance on the ground that Adams' defense at trial would be coercion and intimidation on the part of Cannon and Johnson which was inconsistent with Cannon's defense of self-defense. The trial court denied this motion. Cannon unsuccessfully renewed the motion after opening statements.

At trial, the State's evidence consisted primarily of published court-reported statements of Cannon, Johnson, and Adams. Cannon's court-reported statement established the following. Cannon, Johnson, and Adams were all members of a street gang called the Disciples. On October 6, 1984, Cannon met with codefendants Adams and Johnson and discussed going to 2051 West Lake Street to "get even with some boys that shot at [Adams] during the day." The boys who shot at Adams were members of a rival gang called the Vice Lords.

In his statement, Cannon further stated that later that night, he went to 2051 West Lake Street with the codefendants. Cannon carried a .22 caliber sawed-off rifle, Adams carried a .38 caliber revolver, and Johnson carried an umbrella. When they arrived at the building, Cannon separated from Johnson and Adams and went up to the seventh floor. When Cannon returned to the first floor, he walked out to the front of the building and found Johnson and Adams arguing over the .38 caliber revolver which was to be used for shooting at the Vice Lords.

While Cannon was breaking up this argument, he heard someone shout "Almighty," which meant Vice Lords, and someone immediately started shooting at the three defendants. The defendant saw that the shots were being fired by a person in the 2051 West Lake Street building. All three of the defendants started to run. Cannon turned around and fired three shots at the building. He had to reload the rifle after the first and second shots. The reason Cannon shot at the building was because "[t]hat is where the shots were coming from." Codefendant Adams also fired five shots at the building.

In a portion of a statement by Cannon that defense counsel unsuccessfully requested be redacted, Cannon stated that after firing the three shots, he ran to 2111 West Lake Street, where he and Johnson each fired once at the building located at 2029 West Lake Street. Fi-

nally they ran to 2145 West Lake Street, where they left the gun until several days later when Cannon took the gun to a different location where the police subsequently retrieved it.

Johnson's court-reported statement gave substantially the same account of the events. He additionally stated that Cannon saw the Vice Lords coming while he was trying to break up the argument outside of the building. Johnson further stated that he heard four shots and ran for shelter while Cannon and Adams fired shots at the 2051 West Lake Street building.

One of the shots fired by Cannon fatally wounded Edward Barrow, who was on the second-floor landing of the 2051 West Lake Street building on his way to visit his mother. Barrow was not part of any street gang.

Adams' court-reported statement was also substantially similar to the statements given by Cannon and Johnson. However, at trial Adams, the only defendant to testify, stated that not all of his statement was true. Adams testified that Cannon and Johnson had told him what to say in his court-reported statement and that he followed their instructions out of fear for his own life and that of his family. According to Adams, both Cannon and Johnson held a high rank in the gang. Adams stated that they had been to his home in the past to get him against his will. On cross-examination, Adams testified that Johnson had not threatened him after his arrest and that Cannon never directly told him how to testify.

Adams also testified that before the shooting incident, Cannon and Johnson asked Adams to go to 2051 West Lake Street because someone lived there who owed Johnson money. Cannon had a .22 caliber rifle and Adams got the impression that something might happen to him if he did not go. According to Adams, Johnson carried an army rifle. Adams testified that he was not armed and that he did not fire any shots at the 2051 West Lake Street building. However, Adams later testified that when the Vice Lords began shooting, he returned fire with a .38 caliber pistol which he grabbed from Johnson.

During the jury instructions conference, defense counsel for Cannon requested jury instructions for self-defense, both categories of voluntary manslaughter, and involuntary manslaughter. After hearing argument from counsel, the trial judge concluded that the circumstances did not warrant the giving of such instructions.

On appeal, Cannon first argues that the trial court committed reversible error in refusing tendered jury instructions on self-defense, both categories of voluntary manslaughter, and involuntary manslaughter.

■■ ■ The affirmative defense of self-defense consists of the following elements:

1. Force is threatened against a person;
2. The person threatened is not the aggressor;
3. The danger of harm is imminent;
4. The force threatened is unlawful;
5. The person threatened actually believes;
   (a) that a danger exists;
   (b) that the use of force is necessary to avert the danger;
   (c) that the kind and amount of force he uses is necessary; and
6. The above beliefs are reasonable.

(*People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1021, 415 N.E.2d 499, 501.) A slight amount of evidence is sufficient to raise the issue of self-defense so as to entitle a defendant to a jury instruction under that theory of defense. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 931, 450 N.E.2d 913.) If the evidence supports a self-defense instruction, it also supports a voluntary manslaughter instruction under the definition that circumstances exist which would justify the killing on the ground of self-defense, but that belief is unreasonable. *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378.

■■ We fail to see any evidence which would indicate that the defendant actually believed that the kind and amount of force he used was necessary to avert the danger. The only evidence at trial which would establish the defendant's subjective belief was the defendant's own statement. According to the statement, the defendant started shooting at the 2051 West Lake Street building in response to shots being fired from that building. The statement does not indicate how close the shots were to the defendant or how far away the person firing the shots was from the defendant. The defendant also stated that he started to run and then turned around and fired at the building three times, reloading his rifle after the first and second shots. There is no evidence as to whether the defendant was shooting at a person, at a particular floor of the building or at a particular section of the building. With only evidence that the defendant fired randomly at a building, we cannot say that there is even the slightest amount of evidence to indicate that the defendant actually believed that his response to shots being fired from a building was necessary to avert the danger. Accordingly, we find that the trial court did not err in refusing to give an instruction on self-defense.

■■ Because we hold that the defendant was not entitled to a self-defense instruction on the ground that there is no evidence that he

actually believed that the kind and amount of force was necessary to avert the danger, we find no merit to the defendant's argument that he was entitled to a voluntary manslaughter instruction on the ground that the defendant believes that circumstances exist which would justify the killing, but his belief is unreasonable. *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378.

▮ The defendant also argues that the trial court erred in not instructing the jury on voluntary manslaughter under the definition that he acted under a sudden and intense passion resulting from serious provocation. The defendant's entire theory of voluntary manslaughter is based upon his written statement that someone "started shooting at us." The statement does not indicate the distance between himself and the person firing shots, how close the gunfire was to him, or even how many shots were fired. Without more we cannot say that the defendant is entitled to this instruction. To hold otherwise would permit a defendant to demand unlimited instructions, wholly unrelated to the case and based upon the merest factual reference or comment by the defendant. *People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41, 349 N.E.2d 31, 34.

▮ Finally, in connection with the jury instructions, the defendant argues that the trial court erred in not giving a jury instruction on involuntary manslaughter. In order to justify an instruction on involuntary manslaughter there must be some evidence in the record which shows that the defendant recklessly performed such acts as were likely to cause death or great bodily harm. Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a); *People v. Whitt* (1986), 140 Ill. App. 3d 42, 487 N.E.2d 1246.

▮ In the instant case, the evidence shows that the defendant intentionally and deliberately aimed and fired shots at the 2051 West Lake Street building, which he knew was a residential building. When a defendant voluntarily and wilfully commits an act which has a natural tendency to cause death or great bodily harm, an involuntary manslaughter instruction is not warranted. *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829.

The defendant's next contention on appeal is that the trial court erred in refusing to sever the defendant's trial from that of codefendant Preston Adams. The defendant maintains that Adams' defense of compulsion was antagonistic to the defendant's defense of self-defense such as to deny him a fair trial.

▮ Generally, defendants jointly indicted are to be jointly tried unless fairness requires a separate trial to avoid prejudice to the defendants. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468

N.E.2d 969, 972.) One type of prejudice occurs when the defenses of various defendants are so antagonistic that severance is required to assure a fair trial. (*Daugherty,* 102 Ill. 2d at 542, 468 N.E.2d at 973.) The decision to grant a separate trial is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Bean* (1985), 109 Ill. 2d 80, 93, 485 N.E.2d 349, 355.

■ In a statement which was entered into evidence, the defendant stated that he fired three shots into the building at 2051 West Lake Street in response to shots being fired at him and his codefendants. Adams' written statement concerning the incident basically contained the same facts and allegations as contained in the defendant's statement. During Adams' opening statement and trial testimony, however, his defense was that the defendant and codefendant Johnson forced him to go to 2051 West Lake Street against his will. Adams further testified that he was not shot at earlier that day by the Vice Lords nor did he have a gun at the time of the shooting.

This defense on the part of Adams does not contradict the defendant's testimony that he shot at the 2051 West Lake Street building in self-defense. Defendant's and Adams' statements concerning the shooting incident are consistent. Any contradiction between Adams' and defendant's recollection of events is unrelated to the self-defense theory.

The defendant argues that even if the defense of self-defense and compulsion are not inconsistent he was unfairly prejudiced by certain remarks made by Adams' counsel at trial as well as the testimony of Adams. Specifically, the defendant points to remarks made by Adams' counsel regarding the defendant's conduct of forcing Adams to participate in gang-related activities. During opening statements, Adams' counsel described two victims in the case: the decedent, Edward Barrow, and his client, Preston Adams, who was a victim by virtue of having been "accosted by gang members, beaten and forced to do what they tell him to do." Adams' counsel also told the jury to send a message to Cannon's gang and to other Chicago gangs.

During the trial, Adams testified that the defendant and codefendant Johnson had previously come to his home to get him against his will. Adams also testified that the defendant held a high rank in the street gang to which they belonged and he feared for his life if he did not describe the shooting incident as instructed by Cannon and Johnson.

The defendant cites *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349, in support of his argument that he was unfairly prejudiced by Adams' trial strategy. In *Bean,* the supreme court held that

the defendant was denied a fair trial by the court's failure to grant a severance prior to trial based on codefendant's antagonistic defense and strategy of destroying Bean's case. The supreme court stated that because codefendant's defense was that Bean was the murderer, he could only convince the jury of his own innocence by convincing them to convict Bean, and therefore, in his opening statement, in his cross-examination of various witnesses, and in his closing argument, the codefendant's attorney repeatedly attacked Bean's case.

*Bean* is distinguishable. In the instant case, Adams' strategy was not to destroy the defendant's case of self-defense. The jury did not have to choose between believing the defendant's accounts of the events regarding the shooting or believing the account given by Adams. Adams' remarks about the defendant's use of force to secure his presence at the scene of the shooting does not destroy the defendant's case of self-defense. Therefore, we do not believe that the trial court abused its discretion in failing to grant a severance.

The defendant next argues that the trial court erred in refusing to redact the portion of the defendant's written statement in which Cannon stated that after firing the three shots, he ran to 2111 West Lake Street, where he and Johnson each fired once at the building located at 2029 West Lake Street. The defendant maintains that this section of the statement was irrelevant and impermissibly used to show the defendant's propensity to commit a crime. The State argues that because the other shooting occurred immediately after the defendant and codefendant Johnson fled from the scene of the crime, this evidence is admissible to show that they were acting in concert pursuant to a conspiracy.

■■ We initially note that although this issue was not raised in the defendant's post-trial motion, the defendant raised this argument in his motion *in limine,* and we will therefore consider the argument on appeal.

■■ Evidence of offenses, acts, and wrongs other than those for which the defendant is being tried is inadmissible; however, exceptions exist, and if evidence of other crimes or bad acts is relevant for any purpose other than to show propensity to commit a crime, it is admissible. (*People v. Myles* (1985), 131 Ill. App. 3d 1034, 1043, 476 N.E.2d 1333.) One of the exceptions is evidence to establish that a conspiracy exists, and the trial court is given great latitude in assessing the admissibility of circumstantial evidence when such evidence is offered to establish factors pointing towards a conspiracy. *People v. Bravos* (1969), 114 Ill. App. 2d 298, 252 N.E.2d 776.

■■ In the defendant's written statement, he stated that he and

the two codefendants discussed getting "even with some boys that shot at [Adams] during the day." The defendant and codefendants armed themselves with weapons and fired several shots in return to shots being fired at them from the 2051 West Lake Street building. After firing three shots, the defendant and codefendant Johnson then ran to a nearby building and fired a shot at the 2029 West Lake Street building. The defendants then ran to another building and gave the gun to someone so it could be concealed. This evidence is probative of the conspiracy to commit murder with which the defendant was charged and therefore was properly admitted.

The defendant next argues that his conviction for conspiracy to commit murder must be reversed since the State failed to prove that he entered into the agreement with the intent to kill. The State argues that the agreement to "get even" with the Vice Lords, and the defendant's subsequent act of arming himself with a sawed-off shotgun with the intent to further the commission of that agreement, proved his intent to kill or cause harm beyond a reasonable doubt.

■■ The jury is entitled to make reasonable inferences from the evidence. We do not think that the jury's conclusion that "getting even" means intending to kill is an unreasonable inference under the circumstances of this case, where the defendant armed himself with a rifle and went to a place where rival gang members lived who allegedly shot at a member of the defendant's gang. Therefore, we believe that conspiracy to commit murder was proved beyond a reasonable doubt.

■■ The defendant's final contention is that the trial court erred in entering judgment on two counts of murder and on the inchoate offense of conspiracy to commit murder. We agree. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Griffin* (1982), 113 Ill. App. 3d 184, 446 N.E.2d 1175; *People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329.) Therefore, the defendant's conviction for murder based on the second count pursuant to section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)) and conspiracy to commit murder should be vacated.

For the foregoing reasons, the decision of the trial court is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

LINN and McMORROW, JJ., concur.