No. 2--07--0619      Filed: 11-13-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Ogle County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--73 |
| DERRICK L. RHODES, | ) ) ) | Honorable Michael T. Mallon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

After a jury trial, defendant, Derrick L. Rhodes, was convicted of one count of possession of a substance containing cannabis with the intent to deliver (720 ILCS 550/5(d) (West 2006)). The trial court sentenced defendant to five years' imprisonment and the payment of various fines and costs. After the court denied defendant's postjudgment motion, he appealed. On appeal, defendant argues that (1) his trial counsel was ineffective for failing to request a jury instruction on simple possession (720 ILCS 550/4(d) (West 2006)); (2) his trial counsel was ineffective for failing to object to evidence that defendant exercised his constitutional rights and evidence that defendant was on parole when he was arrested; and (3) he is entitled to a credit, applied against his fines, for time in custody before sentencing. We affirm the judgment as modified.

The State's first witness, Mark Lindmen, testified as follows. He was a parole agent for the Department of Corrections. On May 12, 2006, he was defendant's parole officer and had visited

defendant's home several times before. That day, he went to defendant's apartment to help the police execute a search warrant. Lindmen knocked on the door, and defendant let him in. The police officers then entered. Defendant told them that he did not want them in his home. Lindmen explained that the police had a warrant. The officers then had defendant sit on the couch as Lindmen stayed with him and the officers searched the apartment. The police returned with a bag of suspected cannabis and arrested defendant. Defendant told Lindmen, "Mark, you know I smoke pot." The police handcuffed defendant, searched him, and recovered some cash from his front pocket.

Before May 12, 2006, defendant had told Lindmen that he was working for cash for a drywall company. Lindmen had asked defendant to obtain signed receipts from the company, but defendant had not done so. Lindmen never followed up in order to ascertain whether defendant had a job. Lindmen believed that defendant had told him the name of his employer, but he could not recall it.

Brian Albers, a Rochelle police officer, testified as follows on direct examination. He had been involved in more than 100 narcotics investigations. On May 12, 2006, Albers helped to search defendant's apartment. When Lindmen and the police arrived, only defendant was inside. After Lindmen spoke to defendant, the police entered and explained that they had a warrant.

Albers recovered several items of evidence that were admitted at trial. People's exhibit No. 1 was the bag of cannabis that Lindmen described. People's exhibit No. 2, a digital scale, was found in the kitchen near the cannabis and had what Albers believed was a cannabis residue. Based on his training, Albers opined that the scale had been used to weigh cannabis for sale. People's exhibit No. 3, a box of plastic bags, was found in the kitchen cabinet; Albers testified that the bags would be used to package cannabis for sale. People's group exhibit No. 4 consisted of defendant's driver's license and $200 in cash taken from him after his arrest. People's group exhibit No. 5 consisted of

two packages of rolling papers and a Social Security card, all found on a microwave cart in the kitchen. People's group exhibit No. 6 consisted of a credit card, recovered from the living room, and a bricklayers' "union agreement," found in the kitchen, with instructions to defendant to complete and return the form so that his hours could be properly represented to his local. People's group exhibit No. 7 consisted of credit cards, debit cards, driver's licenses, and identification cards belonging to people who did not live at defendant's apartment. From his experience, Albers knew that drug sellers sometimes retain forms of identification from customers who owe them.

Albers testified that, after arresting defendant, he took him to the police station, where defendant agreed to answer questions. Albers asked defendant why he kept a scale if he did not sell drugs. Defendant responded that he "did not sell to anybody," but then said that if family members "ran out" he occasionally sold them cannabis. Albers again asked about the scale. Defendant responded that, when he left his residence, he "weigh[ed] up" his cannabis so that, if he got caught, he would not have "that much on him." Albers asked defendant why he kept two other people's credit cards and identification in his home. Defendant said that he did not know the first person and that he originally found the second person's cards in his car but had not seen him since then. Albers asked whether defendant wanted to write out a statement; defendant declined.

Albers testified as follows on cross-examination. His police report was the sole record of the interview. He believed, but was not sure, that defendant said that he would "sell" cannabis to family members. Albers removed 10 $20 bills from defendant's pants pocket. People's exhibit No. 1, including the plastic bag, weighed approximately 36 grams. All the cannabis was in one bag. Albers assumed that the residue on the scale was cannabis, but he never had it tested. The scale was found

in the kitchen, but in a different area from the sandwich bags. Other than defendant's identification, the credit cards and other identification found in the apartment belonged to only two people.

Albers testified that 36 grams of cannabis would be an "awful lot" for one person to use himself. Some suspects whom he had searched had carried $200 in cash but had not been charged with selling drugs. Having other people's credit cards did not in itself justify a charge of possession with the intent to deliver.

The State's final witness, Martin Skelcy, a forensic chemist with the Illinois State Police, testified that the plant material in People's exhibit No. 1 weighed approximately 34.1 grams. Skelcy tested the substance and concluded that it contained cannabis.

The parties rested. Defendant's attorney did not request a jury instruction on simple possession. The jury convicted defendant of possession with the intent to deliver. The trial court sentenced defendant to five years in prison and ordered him to pay, among other charges, a $200 statutory drug assessment and a $360 street-value fine. The court did not award any credits against these charges. After the trial court denied defendant's postjudgment motion, he timely appealed.

Defendant argues first that his trial counsel was ineffective for failing to tender a jury instruction on possession of cannabis, a Class 4 felony (720 ILCS 550/4(d) (West 2006)), and instead taking an "all-or-nothing" approach that resulted in defendant's conviction of possession with the intent to deliver, a Class 3 felony (720 ILCS 550/5(d) (West 2006)). Defendant contends that, had the jury been given the option of convicting him of simple possession, it probably would have done so, because the evidence of his intent to deliver was not overwhelming and the jury would not have been faced with the choice of convicting him of the more serious offense or letting him off entirely.

Defendant claims that reversal is required because he was denied his personal right to decide whether to tender an instruction on simple possession. Defendant notes that the decision whether to tender such an instruction, or pursue an "all-or-nothing" approach instead, belongs to a defendant, not his attorney. People v. Medina, 221 Ill. 2d 394, 403-04 (2006). He also notes that the record does not show that he personally made this decision. Defendant uses the silence of the record to argue that we must assume that his trial counsel, not defendant himself, decided on the strategy that defendant now attacks as unreasonable and prejudicial.

We do not agree with defendant's interpretation of the record. In Medina, the supreme court held that, "where *** no lesser-included offense instruction is tendered, and a defendant is not exposed to additional criminal liability, *** it may be assumed that the decision not to tender was [the] defendant's, after due consultation with counsel." Medina, 221 Ill. 2d at 409-10. Therefore, we presume that, because the record does not show otherwise, defendant made or consciously acquiesced in the decision not to tender an instruction on simple possession. However, we do not see that as disposing of his ineffectiveness claim. As Medina notes, "the decision whether to tender a lesser-included offense instruction partakes of, and is unavoidably intertwined with, strategic trial calculations, matters within the sphere of trial counsel." Medina, 221 Ill. 2d at 409. Therefore, even if defendant ultimately chose the strategy here, he may still argue that he did so in reliance on his attorney's expertise, and thus that his decision was the product of counsel's ineffectiveness. Therefore, we turn to the merits of defendant's argument.

To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable; and (2) it is reasonably probable that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); People v. Evans, 369 Ill. App. 3d 366, 383 (2006). To satisfy the first prong of the Strickland test, a defendant must overcome the strong presumption that counsel's conduct was reasonable. Evans, 369 Ill. App. 3d at 383. Counsel's choice of trial strategy is "virtually unchallengeable." People v. Palmer, 162 Ill. 2d 465, 476 (1994). In particular, the decision whether to request an instruction on a lesser-included offense is " 'one of trial strategy, which has no bearing on the competency of counsel.' " Evans, 369 Ill. App. 3d at 383, quoting People v. Balle, 256 Ill. App. 3d 963, 971 (1993); see also People v. Walton, 378 Ill. App. 3d 580, 589 (2007).

We conclude that defendant has not shown that his trial attorney's advice to follow an "all-or-nothing" strategy must have been unreasonable. Counsel could have reasonably believed that, although the evidence that defendant possessed cannabis was overwhelming (as indeed it was), the evidence that he intended to deliver it was not. Therefore, counsel could have decided that, rather than guarantee defendant at least a Class 4 felony conviction, he would give defendant a realistic chance at a complete acquittal. Although defendant notes that the evidence of intent to deliver was not overwhelming, he fails to recognize that this circumstance makes his counsel's calculated risk more understandable. The weakness of the evidence of intent to deliver made it conceivable that the jury would acquit defendant of that offense and thus of any offense. Had the jury been allowed to find defendant guilty of simple possession, there would have been no chance of a complete acquittal. The danger that the all-or-nothing approach would somehow increase the risk of a conviction of the more serious offense was debatable at best, and balancing that risk against the opportunity for a complete acquittal was a matter of trial strategy.

Moreover, defendant has failed to show a reasonable probability that, even had the jury been instructed on simple possession, its verdict would have been different. Although the evidence of defendant's intent to deliver was not overwhelming, it was strong. Defendant admitted to Albers that he sometimes delivered cannabis to family members. (Whether he <u>sold</u> it or not did not affect whether he was guilty of possession with the intent to deliver. The statute does not require the intent to sell.) Albers testified that the amount of cannabis found in defendant's apartment--well over two ounces--was essentially inconsistent with mere personal use. The search of defendant's apartment turned up a scale, plastic bags, and two other people's identification. According to Albers, these all indicated dealing. Given this evidence, it is not reasonably probable that, had the jury been instructed on simple possession, it would have convicted defendant of this offense only. Thus, defendant's first argument fails the prejudice prong of the <u>Strickland</u> test as well as the performance prong.

Before addressing defendant's remaining arguments, we observe that the line of reasoning defendant compels us to pursue above has the potential to confuse an already murky area of the law. Even though the decision not to tender must be attributed to defendant, defendant essentially argues that his decision was caused by poor advice from his counsel, and he thus converts the argument so that we consider the reasonableness of the decision as if counsel made it. (Defendant makes this argument obliquely, by arguing that the decision not to tender was so unreasonable that it could not have been made by defendant and therefore must have been made by counsel.) If a defendant can attack this type of decision by arguing that his counsel's advice was unsound, we wonder if there is any difference, or if there should be any difference, between our review of counsel's strategic advice leading to a defendant's decision and our review of counsel's strategic decisions in general. It may

be that, when our supreme court delineated five decisions that belong ultimately to defendants and not to counsel (see Medina, 221 Ill. 2d 403-04), it conferred defendants not only the right to make those strategic decisions but also some responsibility for their consequences (or it created a stronger presumption that the decision was not a result of ineffective counsel). It may also be that such decisions, even if nominally defendants', can be challenged as being the result of ineffective advice under precisely the same standards as any decision belonging to counsel. If true, this second idea weakens the assumption that the decision belonged to the defendant, and it perhaps moves this one of the five defendant decisions closer to being as finely drawn as the choice to allow the State to present its case by stipulation, which belongs to counsel as long as the defendant does not object to the decision. See People v. Rowell, 375 Ill. App. 3d 421, 436-44 (2006) (Steigmann, J., specially concurring), rev'd, 229 Ill. 2d 82 (2008). We conclude here that the decision not to tender was reasonable, and we thus do not reach any of these issues.

We turn to defendant's remaining ineffective-assistance arguments. Defendant contends that his counsel was ineffective for failing to object to (1) evidence that defendant exercised his fourth and fifth amendment rights; and (2) evidence that, at the time of the search, defendant was on parole. We hold that counsel's performance was not ineffective.

On the first score, defendant contends that his trial attorney should have objected to (1) Lindmen's testimony that defendant refused to allow the police into his apartment until after he realized that they had a search warrant; and (2) Albers's testimony that defendant refused to make a written statement. Defendant cites authority that the State may not elicit testimony that the defendant exercised his right to silence, or his right to be free from unreasonable searches or seizures, as it is unfair to allow a jury to infer a defendant's consciousness of guilt from his exercise

of his rights. See People v. Eghan, 344 Ill. App. 3d 301, 310-11 (2003). However, even improper comment on a defendant's exercise of his rights might not be so prejudicial as to support a claim of ineffectiveness. See People v. Graham, 206 Ill. 2d 465, 476-77 (2003).

Here, we cannot say that trial counsel's lack of objection to the evidence at issue caused defendant any prejudice, much less that it is reasonably probable that objections would have affected the outcome of the trial. The testimony of which defendant complains was brief and given almost in passing. Moreover, the State never suggested that defendant's displeasure with the police officers' entry into his home, or his decision not to write out a statement, showed his consciousness of guilt. In its closing argument, the State did not dwell at all on defendant's exercise of his rights, but instead told the jury that it should convict defendant because of the overwhelming evidence that he possessed cannabis and the strong evidence that he had been delivering it.

Also, the question of consciousness of guilt is a red herring under the distinctive facts here. As defendant concedes, there was no dispute that he was guilty of possession of cannabis, and the only issue was whether he also intended to deliver it. Any suggestion that defendant's exercise of his rights (or perceived rights) showed consciousness of his guilt would not be of consequence, unless his conduct somehow could be construed to show consciousness of his guilt of possession with the intent to deliver and not mere possession. That notion is far-fetched. Even if we could say that the jury improperly inferred that defendant was trying to hide something, we could not say that the "something" was possession of cannabis with the intent to deliver as opposed to mere possession of cannabis, which, after all, was still quite illegal.

On the ineffective-assistance issue, defendant argues finally that counsel should have objected to Lindmen's testimony that he was defendant's parole officer, as this was improper other-

crimes evidence. Defendant maintains that Lindmen could have testified only that he was a state employee who knew of defendant's employment status, thus letting the jurors think that "[Lindmen] worked for the employment department, which would have been less prejudicial."

We cannot say that trial counsel's decision not to object to evidence of Lindmen's actual occupation was either unreasonable or prejudicial. Evidence of other crimes is admissible if it is relevant to prove any fact material to the prosecution. People v. Cortes, 181 Ill. 2d 249, 282 (1998). Lindmen's job at the time of trial was the sort of background information that every witness provides; thus, an objection to Lindmen's preliminary testimony that he was a parole officer would not have succeeded. Also, Lindmen's employment at the time of defendant's arrest was relevant to explaining why he accompanied the police to defendant's apartment and why he was present during the search. Further, as the State notes, defendant's employment status was relevant to whether he was selling cannabis, especially given that the police found $200 in cash on defendant's person. Lindmen provided considerable testimony on what he knew, or tried to find out, about whether defendant had a job. The jury would not have understood this testimony without knowing that Lindmen was defendant's parole officer at the time. Thus, an objection would not have succeeded.

Also, it is not reasonably probable that the exclusion of the evidence would have changed the result of the trial. The State did not dwell on the fact that defendant was on parole at the time of the search, and, as we have noted, the jury already had strong evidence of defendant's guilt. Therefore, defendant's claim of prejudice is unpersuasive. See People v. Wiley, 165 Ill. 2d 259, 286 (1995) (admission of evidence that defendant was on parole did not establish prejudice under Strickland, as evidence of guilt was "considerable").

Defendant contends finally that he is entitled to a credit against his street-value fine and his drug assessment. The State confesses error. We agree with the parties. Defendant spent 272 days in custody before sentencing. As he must receive a credit of $5 per day for each day up to the sum total of the fines (see 725 ILCS 5/110--14(a) (West 2006)), both the street-value fine and the drug assessment have been completely satisfied.[1] Therefore, we affirm the judgment as modified to show that the street-value fine and the drug assessment have been satisfied.

The judgment of the circuit court of Ogle County is affirmed as modified.

Affirmed as modified.

BOWMAN and GROMETER, JJ., concur.

---

[1]We also agree with the parties that, because defendant was convicted of a Class 3 felony, the proper assessment was $500, not $200. See 720 ILCS 550/10.3(a)(4) (West 2006). Of course, because defendant is entitled to a credit of either $1,360 or the sum total of the fines, whichever is less (see 725 ILCS 5/110--14(a) (West 2006)), this particular error is of no consequence.