THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BENJAMIN WILLIAMS, Defendant-Appellee.

First District (1st Division) No. 1—07—0187

Opinion filed May 11, 2009.—Rehearing denied June 2, 2009.

WOLFSON, J., specially concurring.

Patricia Unsinn and Elizabeth A. Botti, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald and Sally L. Dilgart, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

The defendant and codefendant Derrick Skipper were charged with the July 1, 2005, murder of John Riley. The defendant and codefendant Skipper had separate, but simultaneous trials, with the defendant opting for a jury trial and Skipper, a bench trial. Skipper is

not a party to this appeal. Following his jury trial, the defendant was convicted of first degree murder for the shooting death of Riley. The trial court imposed a sentence of 46 years. On appeal, the defendant raises plain error based on the trial court's instruction to the jury that to consider the offense of involuntary manslaughter, the jury had to first acquit the defendant of first degree murder. The defendant argues this error was exacerbated by the prosecutor's improper argument to the jury that only an unintentional or accidental shooting constitutes reckless conduct sufficient to support a claim of involuntary manslaughter where the defendant testified he intentionally discharged the gun. The defendant also contends his trial counsel rendered ineffective assistance in two areas: (1) counsel failed to file a motion *in limine* to preclude the admission of the defendant's prior conviction; and (2) counsel failed to object to the trial court's improper jury instruction. Although we find the trial court erred in instructing the jury as the defendant complains, plain error has not been established. Nor do we find the defendant was prejudiced by defense counsel's deficient performance. We affirm.

## BACKGROUND

The defendant and Skipper were neighborhood friends with John Riley and his brother, Pierre. They often spent time together in a nearby public park, drinking alcohol, smoking marijuana, and gambling.

Pierre, a convicted felon, testified that just before midnight on June 30, 2005, the defendant stole $10 from him during an argument. After, Pierre walked to the nearby public park, where he told his older brother, John Riley (the decedent), his uncle, Ronald Daniels, and his friend, Gregory Hollis, what had happened. The State's evidence showed that the men walked down the street to Skipper's apartment and confronted the defendant through the apartment window about taking Pierre's money. Pierre testified they had a "kind of intense" confrontation. After the verbal altercation, the men returned to the park.

Ronald Daniels, a convicted felon serving a six-year sentence at the time of the defendant's trial, testified that he and his nephew, Riley, returned to Skipper's apartment at 1:30 a.m. because someone told them that the defendant and Skipper were waiting for them there. When they arrived, Skipper was standing outside on the sidewalk in front of his building and the defendant was standing about five feet away, in the doorway of the apartment building. Skipper asked Daniels and Riley what they wanted. Daniels testified that before they could answer, the defendant pulled out a shotgun and raised it to the level of

Daniels' chest, causing Daniels and Riley to run in opposite directions, with Riley running toward the park. Skipper tried to prevent Daniels from running, but Daniels was able to get away. The defendant briefly chased Daniels, but then chased Riley toward the park. At some point, Daniels heard Skipper yell, "shoot him."

While the defendant was chasing Riley, Daniels heard and saw the flash of a gunshot. Daniels testified the defendant was the shooter. At the time of the shooting, Daniels was about 15 feet behind the defendant and could only see his back. During direct examination, Daniels testified he did not see what direction the defendant pointed the gun, nor could he see the muzzle of the gun when it was fired. Daniels did not see Riley during the shooting because he was around the corner from him. Daniels testified neither he nor Riley had a gun. During redirect, Daniels demonstrated how the defendant was holding the gun when he saw the muzzle flash. The prosecutor described it for the record:

> "[T]he witness is holding his right hand with elbow extended out parallel to the floor and his right hand underneath his chin, and he's got his left arm extended in front of him."

During recross, Daniels admitted he could not see the muzzle of the gun or Riley at the time of the shooting, but claimed he "knew [the defendant] was pointing it at my nephew." On re-redirect, Daniels testified the muzzle flash was at shoulder level.

Gregory Hollis was at the park at the time of the shooting. He testified he saw Riley running toward the park, shouting, "he got a gun." As Riley ran by, he pushed Hollis behind a car. Hollis heard Skipper say, "Ben, shoot," to which the defendant responded, "f— this shit." One gunshot followed. After the shot, Hollis saw Riley lying on the ground. Hollis testified he did not see who fired the shot.

The medical examiner testified John Riley died of a single gunshot wound to the face. The slug[1] traveled from the right to left, front to back, and upward. He testified the course of the shotgun slug was consistent with Riley standing chest-to-chest with the shooter, with his head slightly turned to the left. However, he later testified that there were numerous possibilities regarding how the men were positioned and that he could not say with certainty how the men were standing in relation to one another at the time of the shooting. He did not find any evidence of a close-range firing.

---

[1]The medical examiner concluded the decedent's wounds were caused by a lead shotgun slug, not pellets, which are more commonly associated with shotguns.

The defendant testified on his own behalf. He denied stealing $10 from Pierre. He testified the two men got into an argument, during which he took a bag of marijuana from Pierre's hand and threw it to the ground. Shortly after, Riley and some other men confronted him and accused him of stealing Pierre's money. A verbal argument ensued, but there was no physical violence. After, the defendant went with Skipper to his apartment, just a few houses away from the park.

The defendant testified that at some point that night, a group of men, including Pierre, Riley, and Daniels, came and stood in front of Skipper's apartment building. Riley yelled, "tell this bitch ass to come outside, take his ass whoopin' like a man." Daniels told the defendant, "you might as well come out, you might as well come out, take this ass whoopin' now because you're going to get it later."

Skipper went outside to calm down the men so the defendant could safely go home. Before exiting his apartment, Skipper gave the defendant a gun and told him to "scare them away" by shooting the gun in the air if anything happened.

The defendant followed Skipper outside because one of the men yelled for him. The defendant testified he did not see a gun in anyone's hands, but knew that Pierre, Riley, Daniels and Hollis often carried guns. The defendant walked toward the sidewalk in front of Skipper's apartment. Skipper shouted, "bus," which the defendant understood to mean fire the gun into the air to scare everyone. The defendant testified he fired the gun toward the park, which was a few buildings down the road. The defendant admitted he knew people were in the park when he fired the gun, but claimed he did not aim at anyone, nor did he intend to hit anyone. After firing the gun, the defendant dropped it and ran to a friend's house. An hour later, the defendant learned Riley had been shot. He went to his mother's house and, the next day, turned himself in to the police.

In rebuttal, the State introduced a certified copy of the defendant's prior conviction for aggravated unlawful use of a weapon. Defense counsel did not object to the admission of the defendant's conviction record. The trial court admitted the evidence. Later, at defense counsel's request, the court allowed counsel to explain the defendant's prior conviction to the jury during closing argument.

At the close of the evidence, the trial court determined there was sufficient evidence to warrant an instruction on the lesser-included offense of involuntary manslaughter based on the defendant's version of the shooting. The trial court instructed the jury pursuant to Illinois Pattern Jury Instructions, Criminal, No. 7.07 (4th ed. 2000) (definition of involuntary manslaughter) (hereinafter IPI Criminal 4th No. 7.07) and IPI Criminal 4th No. 7.08 (issues involving involuntary

manslaughter). The jury was also given a modified version of IPI Criminal 4th No. 26.01I (the concluding instruction for a case where the jury is instructed on first degree murder, second degree murder, and involuntary manslaughter). The trial court did not instruct the jury with IPI Criminal 4th No. 26.01Q (the concluding instruction for a case where the jury is instructed on first degree murder and involuntary manslaughter). Defense counsel did not object to the instructions.

During closing argument, the prosecutor told the jury it need not consider involuntary manslaughter if it thought the defendant was guilty of murder. The prosecutor further argued that the defendant did not act recklessly for purposes of involuntary manslaughter because the defendant, himself, admitted he intentionally fired the gun toward the park.

The jury found the defendant guilty of first degree murder. The defendant timely appeals.

## ANALYSIS

The defendant frames his initial issue as a denial of his right to a fair trial. He contends the trial court gave the jury the wrong instruction to guide the jury's deliberations on the greater offense of first degree murder and the lesser offense of involuntary manslaughter. Rather than instruct the jury in accordance with IPI Criminal 4th No. 26.01Q (greater, lesser offense instruction), the trial court gave a modified IPI Criminal 4th No. 26.01I that was written to address first degree murder, second degree murder and involuntary manslaughter. Because of the nature of second degree murder, IPI Criminal 4th No. 26.01I provides that the jury must first find the defendant guilty of first degree murder before determining whether a mitigation factor has been proven to reduce first degree to second degree murder.

In modifying the three-offense instruction, the trial court directed the jury to first determine whether the defendant is guilty or not guilty of first degree murder before considering the lesser-included offense of involuntary manslaughter. IPI Criminal 4th No. 26.01Q (greater, lesser offense instruction) contains no such direction to the jury regarding its deliberations of first degree murder and involuntary manslaughter. Rather, the jury is merely told it will be provided with three jury verdicts and it is to "select the one verdict form that reflects [its] verdict." IPI Criminal 4th No. 26.01Q. The defendant contends the improper jury instruction regarding the order in which it must consider the offenses constitutes plain error, warranting a new trial.

The defendant further contends the plain error in instructing the jury was exacerbated by the State's argument that the defendant

could not be found guilty of involuntary manslaughter because he acted intentionally in firing the shotgun.

## Plain Error

Before plain error can be found, error must be shown. *People v. Sims*, 192 Ill. 2d 592, 621, 736 N.E.2d 1048 (2000). In the State's brief, we find no argument that the trial court did not err in instructing the jury with the modified instruction based on IPI Criminal 4th No. 26.01I. The State only argues that the defendant cannot show plain error. See *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995) (upon a "conclusion that an asserted error is a 'plain' one," the plain error doctrine may excuse a procedural default).

The State's initial argument that plain error has not been established cites to authority based on its recharacterizing of the issue presented by the defendant. While the defendant does not claim a violation of "due process" or even mention "due process" in the "Issues" portion of his brief, the State opens its response with a contention that the defendant cannot make out a constitutional claim: "To prevail with this constitutional claim, Defendant must show not merely that the instruction is 'undesirable, erroneous or even universally condemned,' but rather that the instruction 'so infected the entire trial that the resulting conviction violates due process.' *Cupp v. Naughten*, 414 U.S. 141, 146-47[, 38 L. Ed. 2d 368, 373, 94 S. Ct. 396, 400] (1973) (affirming conviction despite a 'presumption of truthfulness' instruction used in the Oregon courts but soundly criticized by the federal courts; any objectionable aspect of the instruction did not rise to the level of constitutional error)."

We decline the State's implied invitation that we turn the claimed jury instruction error into a federal constitutional claim. We find it sufficient to repeat what our supreme court made clear recently: "We have intimated that plain error, while a *nonconstitutional* doctrine, has roots in the same soil as due process." (Emphasis added.) *People v. Herron*, 215 Ill. 2d 167, 177, 830 N.E.2d 467 (2005). Thus, we focus our analysis in this case on whether the concluding instruction to the jury contained " 'substantial defects,' " which " 'are not waived by failure to make timely objections thereto if the interests of justice require [that the jury be properly instructed].' " *Herron*, 215 Ill. 2d at 175, quoting 177 Ill. 2d R. 451(c). Accordingly, the issue before us is whether the concluding jury instruction, based on IPI Criminal 4th No. 26.01I, contains substantial defects regarding the manner in which the jury should undertake its deliberations, in light of IPI Criminal 4th No. 26.01Q, which addresses greater and lesser offenses, so that the erroneous jury instruction constitutes grave error. *Herron*, 215 Ill.

2d at 175, citing *People v. Hopp*, 209 Ill. 2d 1, 7, 805 N.E.2d 1190 (2004), citing *People v. Thurman*, 104 Ill. 2d 326, 329-30, 472 N.E.2d 414 (1984).

In this case, Judge Schreier ruled, over the State's objection, that the jury be instructed on the lesser offense of involuntary manslaughter based on the defendant's testimony. And, it was the State that prepared the jury instructions, which included IPI Criminal 4th No. 26.01I as modified to reflect only the two charges of first degree murder and involuntary manslaughter. While it is undeniable that the modified IPI Criminal 4th No. 26.01I instruction was given without objection from defense counsel, the words of our supreme court have some application here: " '[Where] it is clear that the prosecuting attorney has taken advantage of the accused because he was poorly represented and the trial court has permitted such advantage to be taken, then we will consider the errors notwithstanding the failure to properly preserve the questions for review.' " *Herron*, 215 Ill. 2d at 176, quoting *People v. Gardiner*, 303 Ill. 204, 207, 135 N.E. 422 (1922).

There are two prongs to assess plain error: closeness of the evidence and fundamental fairness. *Herron*, 215 Ill. 2d at 178-79. We consider each as the defendant urges.

### Closeness of the Evidence

It appears the defendant's sole contention that this case falls under the "closeness of the evidence" prong is that the defendant's guilt "turned on whether the jury believed Williams' testimony that he discharged the gun into the air *** or the State's witness' testimony that Williams shot John Riley after chasing him toward the park." We do not disagree so far as that statement goes. However, the closeness of the evidence turns on the persuasiveness of the evidence on each side of the question presented to the jury.

At trial, the evidence clearly established that it was Riley that sought to recover the $10 the defendant allegedly stole from Riley's brother. It was Riley that taunted the defendant outside Skipper's apartment building before returning to the park. It was Daniels and Riley that returned to Skipper's apartment to be chased by the defendant armed with a shotgun. The defendant first chased Daniels, then Riley. With the defendant chasing Riley, Daniels heard Skipper yell "shoot him." The defendant testified to having heard Skipper yell "bus," as a prearranged code for "fire in the air to scare everyone." Yet, the evidence clearly established that the defendant fired the shotgun in such a manner that Riley was shot in the face.

Daniels demonstrated to the jury the manner in which the defendant held the shotgun at the time Daniels saw the muzzle flash.

The State described Daniels' demonstration as showing the defendant holding the shotgun "parallel" to the ground. The manner in which the defendant held the shotgun explained how Riley was shot in the face, negating the defendant's claim that he intended to shoot in the air. Another witness, Gregory Hollis, testified that he was at the park to see Riley run past. Hollis heard Skipper say, "Ben, shoot." Hollis heard the defendant respond, "f— this shit," followed by a single gunshot. Riley, the man the defendant was chasing, ended up on the ground, shot in the face. Against this substantial evidence supporting the State's claim that the defendant shot directly at Riley, the defendant offered his own version of the events.

The defendant claimed he exited Skipper's apartment only because one of the men with Riley, who had threatened to give him an "ass whoopin'," called him outside. The defendant was armed with the shotgun, given to him by Skipper. While in this version no chase occurred, the defendant testified to firing the shotgun in the direction of the nearby park, because Skipper had shouted, "bus." He testified that he did not aim at anyone or intend to hit anyone, when he fired the shotgun. Obviously, the jury did not believe the defendant. And, based on the evidence clearly favoring the State's version of the events, we understand why.

The record evidence on the defendant's guilt of first degree murder was not close. See *People v. Pastorino*, 91 Ill. 2d 178, 188-89, 435 N.E.2d 1144 (1982) (judge's instruction to the jury that it consider murder verdict before manslaughter verdict not plain error because "[t]he evidence is not so closely balanced *** as to prompt us to look past the lack of objection").

## Fundamental Fairness

While the State says little to challenge the defendant's claim that the concluding instruction, as given, was error, we hold it was. The modified version of IPI Criminal 4th No. 26.01I that was used directs the jury to first acquit the defendant of first degree murder before it consider the offense of involuntary manslaughter. This direction goes far beyond what IPI Criminal 4th No. 26.01Q, the greater, lesser offense instruction, contains. Many of the concerns we have regarding the use of such an erroneous concluding jury instruction were stated by this court in a review of a similarly erroneously instructed jury, but in regard to the offenses of murder and voluntary manslaughter. *People v. Pastorino*, 90 Ill. App. 3d 921, 925, 414 N.E.2d 54 (1980), *rev'd*, 91 Ill. 2d 178, 188-89, 435 N.E.2d 1144 (1982). We have not had the benefit of the view of the defendant or the State on the *Pastorino* decision because neither side cited this case.

Of the erroneous jury instruction in *Pastorino*, Justice Jiganti stated: "The record shows that the trial judge told the jury to consider the murder verdict first. If they found that the evidence supported that theory, they were not even to consider the manslaughter theory. *** The judge's comments had the effect of taking away from the jury the necessary element of choice [by] deemphasizing the importance of the manslaughter verdict." *Pastorino*, 90 Ill. App. 3d at 925. The concern we add here is that the modified IPI Criminal 4th No. 26.01I failed to make an allowance for an inability of the jury to reach unanimity on the first degree murder charge before considering the lesser offense. The concluding instruction directed that the jury only consider involuntary manslaughter upon finding the defendant *not guilty* of first degree murder. In IPI Criminal 4th No. 26.01Q, the jury instruction written to address a jury's consideration of greater and lesser offenses, there is no such direction. In fact, the Committee Note suggests that to so instruct the jury, where it has found the defendant guilty of the lesser included offense, is error. "[I]t would be error for the court to tell the jury to nonetheless return a guilty verdict on the greater offense if the jury had somehow also been able to conclude that defendant was also guilty of the greater offense because he had acted intentionally or knowingly." IPI Criminal 4th No. 26.01Q, Committee Note, at 417. In other words, to the extent that the concluding instruction intrudes upon the order the jury is to deliberate on the offenses, such an instruction must also inform the jury that if it cannot reach unanimity on the charge of first degree murder, it may proceed to consider the lesser offense of involuntary manslaughter. See *State v. Labanowski*, 117 Wash. 2d 405, 423, 816 P.2d 26, 36 (1991) ("In the future, a jury should be allowed to render a verdict on a lesser offense if it is unable to reach agreement on the greater offense"); *State v. Allen*, 301 Or. 35, 40, 717 P.2d 1178, 1181 (1986) (Oregon Supreme Court examined studies that show that " 'acquittal first' instruction exacerbates the risk of coerced decisions"); but see *United States v. Ciampa*, 793 F.2d 19, 27-28 (1st Cir. 1986) (approving "logical progression" instruction that requires consideration of greater offense before lesser offense). The error that occurred here, however, may be harmless. *People v. Towns*, 157 Ill. 2d 90, 108-09, 623 N.E.2d 269 (1993) (where the jury finds the defendant guilty of both the greater and lesser offense, it is harmless error to instruct the jury to return only a guilty verdict of the greater offense).

Where the claimed error may be harmless, it cannot be plain error under the fundamental fairness prong. *Pastorino*, 91 Ill. 2d at 189. "To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever

it applies the second prong of the plain error test. [Citation.] We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair." *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920 (2000). In *Pastorino*, the supreme court closed the door to any consideration under the fundamental fairness prong to finding plain error based on the order in which the jury is instructed to consider the pending offenses.

■ The evidence of the defendant's guilt of first degree murder in this case was substantial, much as the supreme court noted of the evidence in *Pastorino*: "There was substantial evidence that defendant committed murder in the admissions made by defendant to her brother and [another witness]." *Pastorino*, 91 Ill. 2d at 189. It follows here, no less so than in *Pastorino*, that the jury instruction error that occurred did not deprive the defendant of a fair trial. *Pastorino*, 91 Ill. 2d at 189 ("no error so substantial as to deprive defendant of a fair trial has occurred"). We have no doubt that had the proper instruction been given here, the jury would have rendered the same verdict it reached. The defendant's right to a fair trial was not substantially compromised by the erroneous jury instruction.

The defendant's claim of plain error here is foreclosed by *Pastorino*; the evidence was not close and no fundamental fairness violation occurred.

### Prosecutor's Closing Argument

■ The defendant claims he was denied due process under plain error when, in closing argument, the prosecutor stated that the defendant did not engage in reckless conduct and, thus, was guilty of first degree murder because he intentionally fired the shotgun. The defendant asserts this argument misled the jury by equating only an unintentional or accidental shooting with reckless conduct.

The prosecutor argued:

"What the defendant did that night was not an unintentional act, and that's what it comes down to, did he intend to cause great bodily harm? Did he know his actions were likely to cause death or great bodily harm? That's what it comes down to. Or was it an unintentional shooting into the air. It clearly was not that. Firing a bullet into a park where there are people present is likely to cause death or serious bodily harm."

The prosecutor followed by alluding to the defendant's motive: the defendant "knew who he was shooting at." The prosecutor argued, "Ladies and gentlemen, this is not a reckless act. This is an intentional act shooting at a person, shooting at people in a park." The prosecutor continued, "Reckless acts, reckless acts. Getting in a car and driving drunk on a crowded street, that's reckless. Shooting somebody in the

face with a shotgun, that's murder." Taking note of the defendant's admission that he knew people were in the park when he fired the gun, the prosecutor went on to argue, "the only way to get to involuntary manslaughter is to believe there was nobody at the park and he couldn't see anybody."

The defendant contends "the prosecution's legal misstatements misled the jury into believing that Williams could not be guilty of involuntary manslaughter, for Williams himself admitted that he intentionally discharged the gun toward the park." The defendant reads these excerpts of the State's argument in the broadest manner to contend that the prosecutor meant that involuntary manslaughter was legally foreclosed by the defendant's intentional act of shooting the shotgun. We reject such a reading. See *People v. Wiley*, 165 Ill. 2d 259, 295, 651 N.E.2d 189 (1995) (comments must be considered in context of the entire closing arguments).

The prosecutor was making an argument, not stating a point of law. The prosecutor properly argued that the defendant could be found guilty of involuntary manslaughter but "the only way to get to involuntary manslaughter" was for the jury to believe the defendant's claim that "he couldn't see anybody" because he took no aim. The facts established at trial support this argument. See *People v. Lasley*, 158 Ill. App. 3d 614, 633, 511 N.E.2d 661 (1987) (proper to comment unfavorably upon the defendant where supported by the facts).

It was not improper for the State to argue that based on its view of the evidence the defendant did not act recklessly as he claimed, but instead, chased Riley, an unarmed man, and intentionally shot at him. The defendant's admission that he was aware of individuals in the park when he fired in that direction adds evidentiary support for the State's argument that the defendant did not act recklessly. The very act of firing a gun in the direction of a group of people may support a trial judge's exercise of discretion in *not* instructing a jury on involuntary manslaughter. See *People v. Sipp*, 378 Ill. App. 3d 157, 161-64, 883 N.E.2d 133 (2007) (the trial court properly refused to instruct on involuntary manslaughter where the defendant testified he fired shots to the right of a crowd of people " 'to scare 'em' "); *People v. Jackson*, 372 Ill. App. 3d 605, 614, 874 N.E.2d 123 (2007) (the defendant's murder conviction affirmed, rejecting his claim that he was going to fire a gun into the air as a warning to scare people); *People v. Cannon*, 176 Ill. App. 3d 49, 55, 530 N.E.2d 1035 (1988) (shooting in the direction of a residential building did not entitle the defendant to a manslaughter instruction). Where the jury is instructed on involuntary manslaughter, the State may argue that the defendant acted intentionally, not merely recklessly, in discharging the weapon.

We find no error, plain or otherwise, in the prosecutor's argument regarding the intentional act by the defendant of firing the shotgun.

## Ineffective Assistance of Counsel

The defendant asserts his trial counsel was ineffective for two reasons: (1) he failed to file a motion *in limine* to bar the admission of his prior conviction; and (2) he failed to object to the use of the modified IPI Criminal 4th No. 26.01I instruction.

To succeed on a claim of ineffective assistance of counsel, the defendant must establish both that counsel's representation was deficient and that the defendant was substantially prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2066-68 (1984), *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). Falling short on either showing is fatal to the claim. *People v. Coleman*, 183 Ill. 2d 366, 397-98, 701 N.E.2d 1063 (1998). Because there is little question that counsel should have done that which the defendant now complains about, we look only to determine whether substantial prejudice has been established. *Albanese*, 104 Ill. 2d at 527, citing *Strickland*, 466 U.S. at 697, 80 L. Ed 2d at 699, 104 S. Ct. at 2069 (lack of substantial prejudice fatal to claim of ineffective counsel).

Substantial prejudice is shown where there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Coleman*, 183 Ill. 2d at 397. Whether counsel was ineffective is an issue we review *de novo. People v. Chapman*, 194 Ill. 2d 186, 217, 743 N.E.2d 48 (2000).

### *Defendant's Prior Conviction*

■ The defendant having testified, the State moved in rebuttal to introduce a certified copy of the defendant's prior conviction for aggravated unlawful use of a weapon. The court inquired whether the State had "checked with" defense counsel about this evidence. The State replied it had. Defense counsel did not reply when the trial court asked whether he had any objection to the evidence being received. The court admitted the evidence.

The next day, prior to the start of closing arguments and outside the presence of the jury, defense counsel explained that his failure to object was based on his belief that the court was going to address the admissibility of the defendant's prior conviction in a sidebar; he had planned to object even though he was "pretty sure" the court would admit the evidence.

The trial judge stated he would have addressed defense counsel's objection in a sidebar, had he requested one. The trial judge went on to state that even if an objection had been made, he would have admit-

ted the defendant's prior conviction pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). The court reasoned that prejudice was minimal as the conviction did not involve the same type of offense pending at trial. The conviction had probative value based on its recent commission, which raised a question of moral turpitude, and thus impacted the defendant's credibility. At defense counsel's request, the court permitted defense counsel to explain in his closing argument to the jury that the defendant's conviction only meant that he had previously possessed a gun.

The defendant argues that because his prior conviction "had little to do with his truthfulness as a witness," his counsel should have moved *in limine* to bar its admission on the ground that its prejudicial effect outweighed its probative value. The defendant argues, "Given the prejudicial effect of the evidence and its minimal probative value, there is a reasonable probability that the trial court would have granted the defense's motion." The defendant argues a pretrial motion *in limine* "may very well have convinced" the court to exclude his prior conviction. We disagree.

The trial court's own statement is sufficient to repel the defendant's argument. We are unpersuaded that a timely filed motion would have resulted in a different outcome.[2] See *People v. Griffin*, 148 Ill. 2d 45, 60, 592 N.E.2d 930 (1992) (*Strickland* does not require the filing of useless motions).

As a related claim, the defendant argues trial counsel was ineffective for failing to object to the State's purported substantive use of his prior conviction. In support, the defendant appears to rely on the following statements by the prosecutor:

"Now as soon as John Riley and Ronald Daniels see the defendant standing in the doorway with the shotgun, they ran. They ran because Ronald Daniels and John Riley knew what [the defendant] was capable of. They knew him, and they knew what he was capable of."

The defendant's claim is untenable. The defendant's attempt to manufacture error based on statements that at most might be viewed tangentially as substantive use of the defendant's prior conviction is too slender a reed to challenge defense counsel's performance. See *People v. Rhodes*, 386 Ill. App. 3d 649, 657, 899 N.E.2d 335 (2008) (lack of objection caused no prejudice and did not affect outcome of trial).

---

[2]We note that the defendant does not challenge, as an erroneous application of the *Montgomery* standard, the trial court's conclusion that it would have admitted his prior conviction over the defendant's objection.

## Improper Jury Instruction

█ Finally, the defendant argues his trial counsel rendered ineffective assistance when he failed to object to the trial court's use of a modified version of IPI Criminal 4th No. 26.01I. Having found no plain error based on the erroneous jury instruction, we conclude the defendant is in no better position by placing fault on trial counsel for his failure to object to the erroneous instruction for two related reasons.

First, whether we characterize the evidence as substantial or overwhelming, the nature of the evidence against the defendant precludes a finding that he was prejudiced by counsel's deficient performance. See *People v. Nitz*, 143 Ill. 2d 82, 108-09, 572 N.E.2d 895 (1991) (fair trial not denied under either plain error or by deficient performance of trial counsel where evidence "not closely balanced"); *People v. Ward*, 187 Ill. 2d 249, 263, 718 N.E.2d 117 (1999) (no reasonable probability that outcome would have been altered in light of overwhelming evidence).

Second, for this defendant to succeed on his claim of ineffectiveness of counsel, he must show that there is a reasonable probability that the outcome would have been different but for defense counsel's failure to object to the erroneous instruction. See *Coleman*, 183 Ill. 2d at 397. As we made clear in our plain error analysis under fundamental fairness, the jury would have rendered the same verdict even if it had been guided by proper instructions.

Where the defendant was not deprived of a fair trial by an erroneous jury instruction under either prong of plain error, it necessarily follows that the required prejudice to establish an ineffective assistance of counsel claim based on counsel's failure to object to the erroneous jury instruction cannot be shown. See *Nitz*, 143 Ill. 2d at 108-09 (fair trial not denied either under plain error or by deficient performance of trial counsel); *People v. Pecoraro*, 144 Ill. 2d 1, 18, 578 N.E.2d 942 (1991) (no plain error analysis warranted where claim of ineffectiveness of counsel made in case where evidence not closely balanced and claimed "error [not] of such magnitude that the defendant was denied a fair and impartial trial").

## CONCLUSION

We reject each of the defendant's claims of error. While the circuit court erred in instructing the jury with a modified version of IPI Criminal 4th No. 26.01I, no showing of plain error has been made. The prosecution's argument, viewed in context, did not preclude the jury from considering the defendant's intentional firing of the shotgun as reckless conduct for purposes of the involuntary manslaughter

charge. The defendant was not substantially prejudiced to establish his claims of ineffective assistance of counsel by counsel's failure to bar the admission of his prior conviction following his testimony or by counsel's failure to object to the improper jury instruction.

Affirmed.

R. GORDON, P.J., concurs.

JUSTICE WOLFSON, specially concurring:
I agree the trial court erred when it gave the jury IPI Criminal 4th No. 26.01I instead of No. 26.01Q. Supreme Court Rule 451(a) (210 Ill. 2d R. 451(a)) directs trial judges to use the appropriate pattern instruction unless "it does not accurately state the law." Here, IPI Criminal 4th No. 26.01Q accurately states the law. It should have been given.

I also agree the issue has been forfeited by defense counsel's lack of objection. It then became the defendant's obligation to demonstrate how he was prejudiced by the giving of IPI Criminal 4th No. 26.01I. We have been offered speculation about the jury's reasoning process, but little else.

Two Illinois Supreme Court decisions support the conclusion there was no plain error here. In *People v. Pastorino*, 91 Ill. 2d 178 (1982), the court saw no plain error where the trial court told the jury not to consider the voluntary manslaughter charge unless it first found the defendant guilty of murder. In *People v. Towns*, 157 Ill. 2d 90 (1993), the trial court gave the jury IPI Criminal 3d No. 26.01Q, but incorrectly included the paragraph authorizing the jury to find the defendant guilty of first degree murder and involuntary manslaughter, despite the different mental states required. Lack of objection led the court to conclude the defendant was not prejudiced. *Towns*, 157 Ill. 2d at 108.

*Pastorino* and *Towns* make two points that are of importance to us. First, the failure to object deprives the trial court of the opportunity to correct any mistake it might be about to make. *Pastorino*, 91 Ill. 2d at 188. Second, where the record as a whole demonstrates the evidence of murder is substantial, the lack of a close balance supports the conclusion that the defendant was not deprived of a fair trial. *Towns*, 157 Ill. 2d at 108-09; *Pastorino*, 91 Ill. 2d at 188-89. Here, the evidence of defendant's guilt on the murder charge was substantial. See *People v. Bartall*, 98 Ill. 2d 294 (1983) (discharge of a weapon into the air over a group of people in a parking lot supports the jury's guilty verdict.)

I do not share the majority's concern about the jury's possible inability to reach a unanimous verdict on the murder charge. That possibility is present in any jury trial. We do not instruct about it.

Involuntary manslaughter is a lesser-included offense of first degree murder. *People v. Robinson*, 232 Ill. 2d 98, 104 (2009). When the offenses to be considered are first degree murder, second degree murder, and involuntary manslaughter, IPI Criminal 4th No. 26.01I tells the jury not to consider the involuntary manslaughter charge unless it finds the defendant not guilty of the two murder offenses. The jury also is told that if any proposition regarding first degree murder has not been proved, it then should decide the involuntary manslaughter charge. That is the instruction given in this case. I do not see how the defendant is harmed by it. That is, I do not see why the presence of a second degree murder charge radically changes the instructional landscape. Whatever reason the criminal pattern instructions committee had for making the distinctions in IPI Criminal 4th Nos. 26.01I and 26.01Q is not shared with us in any Committee Note.